Moore *v.* The City of Indianapolis.

Filed Oct. 30, 1889.

---

No. 15,151.

## MOORE *v.* THE CITY OF INDIANAPOLIS.

INTOXICATING LIQUORS.—*Sale of.—Board of County Commissioners.—License to Sell in Cities.—Section 5319, R. S. 1881, Construed.*—The Act of 1875, regulating the sale of intoxicating liquors, saving section 5317, as amended by the act of 1889, limiting the amount which cities may demand for

Moore v. The City of Indianapolis.

license to sell intoxicating liquors, relates exclusively to licenses issued by the board of county commissioners, and therefore section 5319, R. S. 1881, providing that "No license herein provided shall be granted for a greater or less period than one year," applies only to licenses granted by the county board, and not to licenses granted by cities.

SAME.—*License.—Refusal to Apply for.—Illegal Sale.—Clerk's Fee.—Estoppel.*— One who refuses to apply for a license under the ordinance passed in pursuance of section 5317, R. S. 1881, as amended by Act of 1889, will be estopped to complain, while continuing to sell liquors in violation of the ordinance, that a section of the ordinance by providing for a clerk's fee of one dollar, in addition to the license fee, has exceeded the authority of the council.

SAME.—*License.—Revocation of.— Valuable Consideration.—Police Regulation.*— It is abundantly settled that a license, or permit, issued in pursuance of a mere police regulation has none of the elements of a contract, and that it may be changed, or entirely revoked, even though based upon a valuable consideration. It only forms a part of the internal police system of the State.

SAME.—*Police Powers.—Right to Exercise.—Abridgment of.—Public Welfare.*— A law regulating or authorizing municipal corporations to regulate and impose restrictions upon the sale of intoxicating liquors is an exercise of the police power of the State, and neither the State nor the municipality can, by any sort of contract, license, or permit, abdicate, embarrass, or bargain away its right to exercise the power in such a manner as it may thereafter deem the public welfare requires.

SAME.—*License not a Contract.— Vested Right.—Police Power.— Unexpired License.—Ordinance Increasing Fee for.— Validity of.*—A permit by the State to sell intoxicating liquors is but an exercise of its police power, in which no one can acquire a vested right or contractual interest, and is revocable by the Legislature at any time; and an ordinance in pursuance of a legislative act, which increases the fees for an unexpired license is a valid ordinance.

SAME.—*Ex Post Facto Law.— What Constitutes.*—A law is retrospective, retroactive, or *ex post facto*, which makes acts committed prior to its enactment criminal, or, as applied to past transactions, which creates a new duty or impairs vested property rights acquired under existing laws; therefore, an ordinance declaring that all sales of intoxicating liquors thereafter made by persons failing to comply with its provisions shall be unlawful, is not an *ex post facto* law.

From the Marion Circuit Court.

*J. S. Duncan, C. W. Smith, S. Claypool* and *W. A. Ketcham,* for appellant.

*W. L. Taylor* and *H. E. Smith,* for appellee.

Moore *v.* The City of Indianapolis.

MITCHELL, J.—Section 5317, R. S. 1881, being section six of an act to regulate the sale of intoxicating liquors, and limit the fee to be charged by cities, etc., which went into force March 17th, 1875, Sp. Acts of 1875, p. 56, limited the amount which cities might demand for a license to sell intoxicating liquors within their corporate limits to one hundred dollars per annum.

By an act approved March 11th, 1889, Acts of 1889, p. 395, the above section was amended so as to fix the limit at $250. While the section first above mentioned was in force, the ordinances of the city of Indianapolis fixed the license fee to correspond therewith, and made it unlawful for any person to retail intoxicating liquors within the city limits without having first procured a license from the city clerk. On the 19th day of June, 1889, an ordinance was duly adopted raising the license fee to $250, the limit fixed by the act of March 11th, 1889. This last ordinance, by an express provision to that effect, repealed all prior ordinances in conflict therewith, and prohibited, under penalties prescribed, any person from thereafter retailing intoxicating liquors within the city, or within a distance of two miles of the corporate limits, without having first obtained a license pursuant to the provisions of the ordinance. It was provided, in the first section of the ordinance, in substance, that every person who should thereafter procure a license to sell intoxicating liquors from the board of commissioners of Marion county, and should pay into the treasury of Marion county for the use and benefit of the city, the sum of $250, should be entitled, on presenting to the city clerk the county treasurer's receipt for the amount paid, and a license from the board of commissioners, to receive a license to sell within the city, at the place designated in the license issued by the county board. The second section provided, in effect, that any person holding an unexpired license issued to him by the county board, and an unexpired city license issued under prior ordinances of the city, might obtain a license under the later ordinance for the unexpired

term by paying for the use of the city such proportionate part of $250 as the unexpired term bore to the whole, and that the amount which had previously been paid for a license under the prior ordinance should be taken into account and adjusted so that the applicant would receive full credit therefor.    The appellant, William Moore, was charged with having sold intoxicating liquor within the corporate limits of the city without first having obtained a license in pursuance of the provisions of the last above named ordinance after it had taken effect.

As a defence he relied on an unexpired license issued by the city clerk, and held by him at the time of the alleged sale, which he had received in pursuance of the provisions of the ordinance in force prior to that adopted in June, 1889. The court held the proposed defence insufficient, and the appeal from this ruling involves an inquiry into the validity of the act of March 11th, 1889, and the ordinance adopted by the city of Indianapolis in pursuance thereof.

It is contended that the act above mentioned is invalid and void for failing to conform to the requirement of the Constitution, in that it contains no reference, in the body thereof to the title of the act to which it purports to be an amendment.    This branch of the case is fully considered in *Bush* v. *City of Indianapolis, ante,* p. 476.    After careful consideration, the point was decided adversely to the appellant, and needs no further attention here.

The appellant insists, however, that even if the act above mentioned should be held valid, yet the ordinance passed in pursuance thereof is beyond the authority conferred on the city council, and hence void.    The first objection to the ordinance is predicated on section 5319, R. S. 1881, in which it is declared that " No license herein provided shall be granted for a greater or less time than one year."    Taking this section as a premise, it is argued, in effect, that said section two of the ordinance in question makes provision for issuing a license for a period less than a year to any person

to whom a county license had issued before the taking effect of the ordinance, and who held an unexpired city license, the conclusion follows that the ordinance is invalid. While there is some plausibility in the argument as presented, we can not give it our assent.

With the exception of section 5317, as amended by the act of March 11th, 1889, the act of 1875 relates exclusively to licenses issued by the several boards of county commissioners. The sole purpose of that section, and of the amendment thereto, is to place a limitation upon cities and towns in respect to the amount which they might thereafter demand as a license fee in addition to the sum paid for license from the county board. Thus it has been held again and again that the act of March 17th, 1875, conferred no authority upon cities or incorporated towns to regulate or license the sale of intoxicating liquors, and that cities derive their power to demand license fees from sections 3106 and 3154, R. S. 1881, which sections are found in the general statute regulating the incorporation and providing for the government of cities. *Walter* v. *Town of Columbia City*, 61 Ind. 24; *Cowley* v. *Town of Rushville*, 60 Ind. 327; *Lutz* v. *City of Crawfordsville*, 109 Ind. 466; *Wagner* v. *Town of Garrett*, 118 Ind. 114.

The Legislature has conferred the power to regulate the liquor traffic in cities upon the municipal authorities in the broadest terms, the only limitation being upon the amount of the license fee which may be demanded. Concerning all matters of detail in the manner of regulation cities are left untrammeled.

The power of municipal corporations to exact license fees is not confined to requiring payment from persons who have State or county licenses, but extends to all persons, whether licensed by the county board or not, who keep shops for the sale of intoxicating liquors within the prescribed limits. The power exists altogether independently of the act of 1875. *City of Frankfort* v. *Aughe*, 114 Ind. 77; *Lutz* v.

*City of Crawfordsville, supra.* Since, therefore, the authority of cities to regulate the sale of intoxicating liquors, and to exact license fees from persons engaged in the business of selling at retail, is not, except as already indicated, controlled by the act of 1875, it follows that section 5319, which is a part of that act, and which prohibits the granting of a license for a greater or less period than one year, has no application to cities. We have not overlooked the argument based upon the assumption that the Legislature must have intended to provide a uniform system for the issuing of licenses by counties and cities, and that it should be held, therefore, that because counties are prohibited from issuing licenses, except for a prescribed period, it must have been the intention of the Legislature to extend the same prohibition to cities. Since, however, the legislative intent to fix the period for city licenses is wholly unexpressed in any statute, the argument, so far as it is based on analogy and convenience, can only have force when addressed to a body to which the framing of ordinances is committed. It may not be amiss to say, in concluding upon this point, that the ordinance in question in its practical effects, after the methods therein provided are duly initiated, does not violate this presumed legislative intent. To the extent that it makes provision for obtaining a license for a period less than a year, it was obviously intended for the benefit of those who, like the appellant, held unexpired licenses when the ordinance took effect.

The second objection urged against the validity of the ordinance is, that it requires the applicant for a license to pay a sum in excess of that allowed by the statute. By the terms of the ordinance it is made the duty of the city clerk, after certain conditions are complied with by the applicant, to issue to him a license. Section 3 requires the clerk to keep a register of the names of all persons to whom licenses are issued, together with the date when issued, and the time when each license expires, also the number of the street and

location where the licensee proposes to conduct the business. For this service a fee of one dollar is provided, which is to be paid by the person receiving the license. In this way, it is said, the licensee is charged $251 for a license, and thus it is said a sum in excess of the amount allowed by the statute is demanded. If the appellant had applied for a license in compliance with the other sections of the ordinance, and his application had been refused because of his failure to pay the fee provided for the city clerk, he might, with some plausibility, insist upon the question presented. But he will not be heard to set himself in the face of the whole ordinance and refuse to take out or apply for a license while continuing to sell in violation of its provisions, upon the pretext that the fee of one dollar provided for the city clerk is in excess of the authority of the common council. When a case arises in which the applicant for a city license has tendered the amount which it is conceded the statute authorizes the city to charge, and has been refused because of his failure to pay the clerk's fee, we will decide whether or not a fee may lawfully be demanded by the clerk. *Wagner* v. *Town of Garrett, supra.*

It is next contended that the municipal authorities had no power, under the statute in question, to enact an ordinance increasing the amount of the license fee, and make it applicable to unexpired licenses, thereby practically annulling permits theretofore issued by the city. While conceding that a license is not an absolute contract in which the licensee obtains a vested right, during the full period for which it was granted, to sell upon the same terms as when the license was issued, it is contended that it is, nevertheless, in some sense, a contract between the city and the licensee, under which the latter acquires an absolute right to sell liquors during the term, subject to municipal regulation, without being required to pay an enhanced price, simply for the purpose of increasing the city revenue. Moreover, it is contended that a license to retail intoxicating liquors is a thing

of value, in the nature of property, and that, even if the Legislature had the power to annul existing licenses, or authorize it to be done, good faith required that the money paid for the unearned portion be refunded. Finally, it is said the ordinance is invalid, as applied to cases like the present, within the principle which denies, in the absence of a clearly expressed intent to the contrary, the power to give a law or ordinance retrospective or retroactive operation. We do not deem it necessary to enter upon an elaborate discussion of the several propositions involved. It is sufficient to say that principles as firmly settled as anything can be, upon the highest judicial authority, sweep away every vestige of the foundation upon which the argument against the validity of the ordinance rests. When it is conceded, as it is, and must be, that a law regulating, or authorizing municipal corporations to regulate, and impose restrictions upon, the sale of intoxicating liquors, is an exercise of the police power of the State, then it follows inevitably that neither the State nor the municipality can, by any sort of contract, license, or permit, abdicate, embarrass or bargain away its right to exercise this power in such a manner as it may thereafter deem the public welfare requires. It is the peculiar province of the State, either by legislative enactment or through authority delegated to municipalities, to exert its police power for the protection of the lives, health and property of its citizens, as well as to maintain good order and preserve public morals. It is everywhere conceded that the traffic in intoxicating liquors affects all these subjects, and that it is hence a proper subject for police regulation.

It is essential, therefore, that the power to regulate should be a continuing one, ever present and available, to be exercised by the State as emergencies may require. Hence the rule that neither the State, nor any of its agencies to whom the power has been delegated, can divest itself of the right to impose such other or additional restrictions upon the sale

of intoxicating liquors, as the maintenance of good order or the preservation of the public morals may seem to require. Cooley Const. Lim. 5th ed., p. 343.

Those powers which are inherent in all governments, and the exertion of which, as emergencies may demand, is essential to the well-being of organized society, can not be abridged or weakened, or their vigor impaired by contract or bargain. *Boyd* v. *Alabama*, 94 U. S. 645.

If by authorizing a license or permit for one year, the State could deprive itself of the right to impose new restrictions upon the licensee during that period, a law authorizing licenses might bind successive Legislatures for three, five, or even ten years. If the legislative discretion could be fettered or bargained away for one year, it could upon the same principle be bargained away for an indefinite period.

It is, however, abundantly settled that a license or permit issued in pursuance of a mere police regulation has none of the elements of a contract, and that it may be changed, or entirely revoked, even though based upon a valuable consideration. Cooley Const. Lim. 5th ed., p. 343.

A license issued under the law regulating the sale of intoxicating liquors has neither the qualities of a contract nor of property, but merely forms a part of the internal police system of the State. *Metropolitan Board* v. *Barrie*, 34 N. Y. 657. No one can acquire a vested right in a mere statutory privilege so as to bind the State, or prevent a change of policy as the varying interests of society may require. Cooley Const. Lim. 5th ed., p. 473.

"Sovereigns may make contracts which, under our Constitution, will preclude them from impairing vested rights by subsequent legislation, but this result never follows the exercise of a purely police power." *McKinney* v. *Town of Salem*, 77 Ind. 213, and cases cited. "As the power to grant, withhold or annul licenses to sell liquor is an exercise of the police power, it follows that no limitation can be placed upon its exercise by any statutory provision." *State, ex rel.*, v.

*Bonnell,* 119 Ind. 494; *Stone* v. *Mississippi,* 101 U. S. 814; *Beer Co.* v. *Massachusetts,* 97 U. S. 25. It is impossible that a mere license or privilege secured under the internal police system of the State, should be invested with the elements of a contract so as to be beyond legislative control. *Burnside* v. *Lincoln County Court,* 86 Ky. 423 (7 S. E. Rep. 276).

" The law is now settled," said the Supreme Court of Georgia, " that the Legislature has the power to revoke licenses granted to retail liquors. Such a license is in no sense a contract by the State, county, or city with the person taking out the license. It is simply a permit granted by the authorities to do business under the license ; and the license may be revoked by the Legislature at any time.". *Brown* v. *State* (Ga.), 7 S. E. Rep. 915; *Fell* v. *State,* 42 Md. 71; *Calder* v. *Kurby,* 5 Gray, 597 ; *Commonwealth* v. *Brennan,* 103 Mass. 70 ; *Martin* v. *State,* 23 Neb. 371 ; *Pleuler* v. *State,* 11 Neb. 547.

In the case last cited it was held that licenses granted under a former law, which had been repealed, were absolutely revoked upon the taking effect of the later law. Thus it follows that by enacting the ordinance of June 19th, 1889, and repealing the former ordinance, the appellant's license was revoked.

The enactment of a law placing restrictions upon the sale of intoxicating liquors, and requiring the payment of a specified sum of money, and that a license be obtained before the business of selling can lawfully be entered upon, is not to be regarded as a proposition on the part of the State to contract for privileges, or to sell indulgences, but rather as a public proclamation, announcing that the State regards the unrestricted sale of intoxicating liquors as prejudicial to the general welfare, and that in the exercise of its police power, the traffic has been placed under regulation and restraint. Those who engage in the traffic, after the enactment of such a law, must be regarded as having notice from the beginning,

that the power of regulation is a continuing one, and that the State reserves to itself the right to deal with the subject as the special exigencies of the moment may require. *Stone* v. *Mississippi, supra.*

They are bound to know that the license or permit has no force or vitality except as it derives it from the law under which it was issued, and that if the public good requires that the law be modified or repealed, no incidental inconvenience which they may suffer can stay the hand of the State. No one can acquire a vested right in the law. *Bryson* v. *Mc-Creary*, 102 Ind. 1; *Edwards* v. *Johnson*, 105 Ind. 594.

Even if it were conceded that a permit to sell intoxicating liquors was possessed of some of the characteristics of property, or that it was a thing of value, in the eye of the law, it would still offer no impediment against the exertion of the police power of the State. " The acknowledged police power of the State extends often to the destruction of property." *License Cases*, 5 How. 504 (577); *Mugler* v. *Kansas*, 123 U. S. 623 (658).

Even though the enforcement of an ordinance may operate to destroy a business theretofore lawful, and to seriously impair the value of property acquired under the sanction of a special law or charter, these considerations do not render the ordinance invalid or prevent its enforcement, when the protection of the public health or the promotion of the general welfare requires it. *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659 (667); *Beer Co.* v. *Massachusetts, supra.*

There is a broad distinction between the taking of property under the power of eminent domain for a public use, and the incidental injury or inconvenience which results to property or business on account of the exertion of the police power of the State, when its purpose is the promotion of the public welfare. In the former case, compensation must be made ; in the latter, no such obligation arises. A wide distinction exists, too, between an ordinance enacted in the ex-

ercise of the police power of the State, for the protection and security of the citizens, and one which merely imposes license fees for purposes of revenue, without any relation to the internal police and government of the city or State. Laws which impose pecuniary burdens on the liquor traffic are not revenue measures, in the proper sense, and although revenue may arise therefrom as an incident, the imposition is designed as a restriction on the traffic, and has relation to the internal police system of the State. *Pleuler* v. *State, supra; Mayor* v. *Second Ave. R. R. Co.,* 32 N. Y. 261.

The contention that the ordinance is retrospective or retroactive is not sustained.

A law can only be said to be retrospective or retroactive, or *ex post facto,* when it makes acts which were committed antecedent to its enactment criminal, or when it is to be applied to past transactions so as to create a new duty or impair vested property rights acquired under existing laws. Anderson Law Dict., p. 897.

The ordinance in question does neither. It is altogether prospective in its operation. It declares that all sales of intoxicating liquors thereafter made within the corporate limits by persons who fail to comply with its provision shall be unlawful. The appellant was prosecuted for a sale made after the ordinance in question took effect. He was bound to know at the time he made the sale that he was violating the ordinance. He took the chance of defeating the ordinance, and he can not now complain that it was either an *ex post facto* or retroactive law. *State* v. *Isabel,* 40 La. Ann. 340.

As we have already seen, he acquired no vested right under the previous ordinance which was taken away, nor was there any contract relation existing, the obligation of which was impaired. When the premise is once established that one can acquire no vested right or contractual interest in a police regulation, the conclusion follows that subsequent regulations on the same subject can not be retrospective in a technical sense. "The contracts which the Constitution

protects are those that relate to property rights, not governmental." *Stone* v. *Mississippi, supra.*

The judgment is affirmed, with costs.

Filed Oct. 30, 1889.