BOOS *v.* SCUDDER.

1. CONSTITUTIONAL LAW—INTOXICATING LIQUORS—STATUTES.
    Whether Act No. 291, Pub. Acts 1909, gives too wide a latitude to the sales which a wholesaler may make, is a legislative, not a judicial, question.

2. INTOXICATING LIQUORS—ORDINANCE OF VILLAGE—PROHIBITION.
A village ordinance enacted under 1 Comp. Laws, § 2769, and prohibiting any person from conducting a saloon or bar for the sale of intoxicants, does not preclude the wholesaling of liquors, except such as may be sold in a saloon or at a bar.

3. SAME—WORDS AND PHRASES—SALOON.
The word saloon, as used in the statute, refers to places where persons come to buy liquor to be drunk on the premises.

4. SAME—WHOLESALE AND RETAIL—LICENSE.
Prohibition of saloons and saloon bars in a village, by ordinance, is no justification for refusing to grant a license to a wholesale liquor dealer.

5. SAME—MANDAMUS.
Mandamus will not issue to compel a village council to grant a liquor dealer's license, where it was found by the lower court that the council adjourned at once after the application and bond were filed under a pending motion to adjourn, and had not sufficient time after filing to consider the matter.

6. SAME.
Nor will the writ compel the granting of a license which, on the face of the application, will authorize the sale of spirituous or intoxicating liquors in the barroom of a hotel, in such village.

7. SAME—MUNICIPAL CORPORATIONS—VILLAGES—WARNER-CRAMTON ACT.
The Warner-Cramton Act (Act No. 291, Pub. Acts 1909) did not repeal the general village law, or prevent villages from suppressing saloons under the prior statute.

8. STATUTORY CONSTRUCTION—REPEALS BY IMPLICATION.
Repeals by implication not being favored, acts which are not irreconcilable should be allowed to stand.

### ON REHEARING.

MANDAMUS—INTOXICATING LIQUORS—LICENSE.
It appearing to the court, on rehearing, that the question of relator's right to a wholesaler's license was litigated in the court below, and that under the opinion of this court he was entitled to such license, mandamus was granted to compel the council to grant it.

Certiorari to Kalamazoo; Knappen, J. Submitted July 15, 1910. (Calendar No. 24,117.) Decided Septem-

ber 27, 1910. Rehearing granted December 22, 1910. Former opinion modified January 9, 1911.

Mandamus by Frank H. Boos to compel Charles B. Scudder, president, and others, constituting the common council of the village of Augusta, to approve a liquor bond. An order denying the writ is reviewed by relator on writ of certiorari. Reversed.

*Harry C. Howard*, for relator.

*Frost & Farrell* and *Stewart & Jacobs*, for respondents.

HOOKER, J. On June 10, 1910, the relator made and filed an application to the council of the village of Augusta, in Kalamazoo county, for a license to carry on the business of selling at wholesale brewed or malt liquors. He accompanied it with a surety company's bond in the proper amount. The council adjourned to June 16th, on which day a motion not to consider the wholesale bond was carried, whereupon while the council was in session, but after a motion to adjourn had been made, an application for a retail license and a retail dealer's bond were presented. Adjournment was then voted by the council without action. Relator thereupon petitioned the circuit court for a mandamus to compel the council to accept the bonds and issue the licenses, and, upon the return to the order to show cause, the prayer of the petition was denied, and relator has brought the case to this court by certiorari.

Augusta is organized under the general law for the incorporation of villages, being chapter 87, 1 Comp. Laws. Subchapter 7 of said chapter 87 contains the provision conferring powers upon the council, among which is "to suppress saloons for the sale of spirituous and intoxicating liquors," etc. 1 Comp. Laws, § 2769, subd. 7. On March 14, 1910, the council adopted the following ordinance:

"Ordinance No. 35.

"To suppress saloons and bars for the sale of spirituous and intoxicating liquors.

"SECTION 1. The village of Augusta ordains, that it shall be unlawful for any person or persons to own, establish or operate, in person, or by clerk, servant, agent or employé, any saloon or saloon bar for the sale of malt, brewed, spirituous, fermented, vinous and intoxicating liquors in the village of Augusta.

"SEC. 2. It shall be unlawful for any person by himself, his clerk, servant, agent or employé, to sell, offer for sale, or keep for sale, in any saloon or bar in the village of Augusta, any malt, brewed, spirituous, fermented, vinous or intoxicating liquors."

A penalty was provided by other sections which we think it unnecessary to include in this opinion.

The council bases its refusal to issue the licenses and approve the bonds upon this ordinance. In answer, the relator cites Act No. 291, Pub. Acts 1909, known as the "Warner-Cramton Law," which was an act to amend certain sections of the general law providing for the taxation and regulation of manufacturing, selling, etc., of spirituous and intoxicating liquors, and to add 35 new sections thereto, and which his counsel contends repealed subdivision 7, 1 Comp. Laws, § 2769, of the general village law. He claims, also, that the selling of liquor at wholesale not to be drunk upon the premises where sold is not keeping a saloon, and therefore the council had no power to prohibit the selling at wholesale, and, furthermore, that the ordinance does not by its terms include wholesale houses. The act of 1909 (section 2) defines a "wholesaler" as follows:

"Wholesale dealers shall be held and deemed to mean and include all persons who sell or offer for sale such liquors and beverages at wholesale in original trade packages and in bulk and by measure not to be drunk on the premises."

We do not overlook respondents' claim that this gives a wide latitude to the sales that a wholesaler may make, but,

if it is too wide, it is a legislative, and not a judicial, question; and we observe that in section 1 of Act No. 291 that matter has received attention.

Assuming that the ordinance is valid, we are constrained to say that it does not in terms preclude the wholesaling of liquor, except where it shall be sold in a saloon or at a bar. The only construction to which subdivision 7, § 2769, is susceptible, is that the word " saloon " refers to places where persons come to buy drinks of liquor, to be drunk there. It is the common understanding of a liquor saloon that is meant, and the ordinance means no more. We are therefore of the opinion that the ordinance is no obstacle to the authority of the council to license wholesaling, and no justification for a refusal to do so, in a proper case. As we said in *Village of Sparta* v. *Boorom*, 129 Mich. 558 (89 N. W. 436):

" We are not prepared to say that a wagon might not constitute a saloon, or that a saloon might not be movable, or that it would be any the less a saloon because it was continually moved from place to place, but that is not the charge here. The general village incorporation act did not authorize the prohibition of the sale of liquor in general terms, and it omitted to enlarge the meaning of the word 'saloon.' The term has a common and well-understood meaning, and this meaning must be applied to this act. 1 How. Stat. § 2; 1 Comp. Laws, § 50. It did not authorize the village council to enlarge its meaning by calling every man who should make a sale of liquor a saloon keeper, and the cases which hold that a single sale may be evidence to show a man a saloon keeper, where it occurred in a saloon, are not in point."

To this we may add that it does not follow that a wholesaler may not so conduct his business as to make him chargeable with keeping a saloon, or doing it in a saloon or over a bar. See *Rattenbury* v. *Village of Northville*, 122 Mich. 160 (80 N. W. 1012). We think that the case of *Craig* v. *Werthmuller*, 78 Iowa, 598 (43 N. W. 606), is plainly distinguishable from this case, and that the allusions to saloons and saloon purposes have no application here, and it seems to us so obvious that we do not feel

justified in elaborating the question of its application. Counsel for respondents offer two other reasons why this writ should not issue:

(1) That the council in good faith refused to pass upon the sufficiency of the wholesaler's bond, and has not considered the question, apparently relying on the ordinance as a sufficient reason.

(2) That the application and bond were filed with the council pending a motion to adjourn and that the council almost immediately adjourned.

The court found this to be true, and that the council had not had "sufficient time after such filing to consider the same to justify the court in ordering their approval."

We must accept this finding of facts as true, and therefore the writ cannot issue. But as this is a reason that is technical in its nature, we consider the other reason, viz., that their refusal is justified by the ordinance, to settle a question which is really involved, and to prevent the necessity of further litigation by another application for mandamus as to the retailer's license. This application on its face asks a license to sell spirituous or intoxicating liquors in the barroom of a hotel. It therefore was an application to sell over a bar, if not in a saloon, and we think it within the prohibition of the ordinance, and therefore, unless the ordinance is void, the writ cannot issue.

It is relator's claim that the general village law was repealed by the Warner-Cramton act of 1909. Act No. 291, Pub. Acts 1909. The law for the incorporation of villages (chapter 87, 1 Comp. Laws) was passed in 1895 (Act No. 3, Pub. Acts 1895). As we have seen, it conferred power upon councils to prohibit saloons. Unless it has been repealed by implication, it is yet in force, and the ordinance is a sufficient answer to relator's claim, as this later act in its turn took precedence over the liquor law of 1887 (Act No. 313, Pub. Acts 1887, 2 Comp. Laws, § 5379 *et seq.*), and gave to Augusta local powers on this subject. It is claimed that this was done by the amendments of 1909.

Starting, then, with the proposition that the exclusive provisions of the law of 1887 (which we have held repealed ordinances on this subject at the time it was passed) were limited in their application by the law of 1895, which re-enacted the authority to village councils, we must inquire whether Act No. 291, Pub. Acts 1909, is consistent with the continued existence of subdivision 7 of the village incorporation act for it having been made to appear by the passage of the act of 1895 that, notwithstanding the interpretation previously put upon this identical subdivision 7 in the former village incorporation law, it was the legislative will that the power should be reconferred upon the village councils, we must find some subsequent legislation showing a contrary intent, or conclude that there was no intention to repeal it. The act of 1909 amended and added to the general liquor law of 1887. Some of the reasons given in *People* v. *Furman*, 85 Mich. 110 (48 N. W. 169), have lost their force by the passage of the law of 1895; *e. g.*, that this was a general liquor law, and that it especially provided that all inconsistent laws should be repealed. There is nothing in the law of 1909 to show that it or the law as amended was designed to be of more general application than that of 1887, after the limitation was put upon it by the new village act, and there is an absence of any new repealing act. We find nothing in the law of 1909 justifying the inference that it was designed to take from incorporated villages the power reconferred by subdivision 7 of the act of 1895. Upon this subject, where one act is special, see a discussion in *People* v. *Wenzel*, 105 Mich. 70 (62 N. W. 1038). Neither of these acts is special, but there may be seen an analogy arising from the fact that the general incorporation act confers special powers to a class of localities. There is nothing irreconcilable in these two acts, and, as said by Endlich on Interpretation of Statutes, § 210:

" But repeal by implication is not favored. (*a*) It is a reasonable presumption that the legislature did not intend to keep really contradictory enactments in the statute

book, or to effect so important a measure as the repeal of a law without expressing an intention to do so. Such an interpretation, therefore, is not to be adopted unless it be inevitable. Any reasonable construction which offers an escape from it is more likely to be in consonance with the real intention. Hence it is a rule founded in reason, as well as in abundant authority, that, in order to give an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it, the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and those of the earlier law so positive as to be irreconcilable by any fair, strict, or liberal construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving, at the same time, the force of the earlier law, and construing both together in harmony with the whole course of legislation upon the subject."

See, also, *Lake* v. *Village of Cedar Springs*, 162 Mich. 569 (127 N. W. 690).

We are of the opinion therefore that the order of the learned circuit judge was correct, and the same is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.

### ON REHEARING.

PER CURIAM. Counsel filed a motion asking a further order in this cause; *i. e.*, that a mandamus issue requiring the village board to convene and approve the application for a wholesaler's license, and that relator have two weeks thereafter within which to file a satisfactory bond, procure its approval, and file the same. A rehearing was had.

The relief asked by the prayer of the petition in the circuit court was that a mandamus issue to compel the village council to approve the "application and bonds" and the clerk to certify to such approval. Apparently the cause was there litigated upon the question of the validity of the ordinance, and the authority and good faith of the council in refusing to accept surety bonds. Under his finding

of facts and law, he held that the council had authority to refuse surety bonds, and denied the writ on two grounds: (1) That the ordinance was valid, and precluded a retailer's license on this application; and (2) that the council had not consented to accept a surety bond on either application. We saw no evidence that he was asked to compel action granting the prayer of the petition alone, or that he considered such question. The cause was brought here by certiorari, and the question is whether the trial court erred in his application of the law to the facts.

Were the case one of original jurisdiction in this court, we might have granted the relief now sought. See *Hosier* v. *Township Board*, 45 Mich. 340 (7 N. W. 897). Where, however, the case originates in the circuit court, the general rule in certiorari cases prevails, and we will review only questions raised below. *Patterson* v. *Goodrich*, 31 Mich. 225; *Witherspoon* v. *Clegg*, 42 Mich. 485 (4 N. W. 209). Doubtless the circuit court might have granted the writ, although not specifically asked to compel action on the petition separately; but if his attention was not apparently challenged to this, or any desire for such action expressed, we would assume that he did not consider it, but disposed of the matter upon the bond, as his opinion shows:

"The court has some doubt as to the right and power of the village to accept the bond of the relator to engage in the wholesale liquor business under the authorities cited, but does not rest its determination upon that point alone, but rather upon the fact that the village council has not consented to accept a surety company's bond in preference to a personal bond, and that they are the sole arbiters of that decisive question."

While we declined to reverse his order, our opinion shows that we intimated that a wholesale liquor license might issue. Had the council afterward been asked to grant a license separately upon the same, or, if necessary, upon a new application, it is reasonable to suppose that it might have received favorable and speedy action. An ex-

amination of the record shows, however, that one of the issues of the respondents raised this question, and a certificate of the circuit judge recently filed shows that it was a controverted question, though not specifically disposed of by him. We are of the opinion that the relator was entitled to such relief, and therefore modify the former opinion in this respect.

The writ will issue as prayed as to the granting of the application for a wholesale license, subject to the provisions of law in relation to the required bond.