FUCHS *v.* COMMON COUNCIL OF THE VILLAGE OF
GRASS LAKE.

1. INTOXICATING LIQUORS—VILLAGES—PROHIBITION—MANDAMUS.
    Mandamus, being a discretionary writ, will not issue to compel
    a village council to grant relator a license to conduct a sa-
    loon, where, after the relator's application was filed and be-
    fore the hearing in the mandamus proceedings, the council
    adopted an ordinance prohibiting the liquor traffic, taking
    effect 10 days after the date at which his license would have
    gone into force.

2. SAME—POLICE POWER—ALIENATION.
    The regulation and suppression of the sale of intoxicating
    liquors is a part of the police power of a municipality and may
    not be limited or alienated by contract express or implied.

3. SAME—CONSTITUTIONAL LAW.
    Under 1 Comp. Laws, § 2769, villages are empowered to sup-
    press saloons, and ordinances for such purpose are constitu-
    tional.

4. SAME.
    While respondent should have approved relator's application, in
    so far as his right was concerned to conduct a saloon before
    the ordinance became effective, the circuit court rightly de-
    nied the writ of mandamus after that date, when a saloon
    could not be legally conducted in the village.

5. SAME.
    The writ of mandamus is a discretionary writ that will not be
    allowed unless the respondent has power to execute it.

Certiorari to Jackson; Parkinson, J.  Submitted June
20, 1911.  (Calendar No. 24,655.)  Decided July 5,
1911.

Mandamus by William Fuchs to compel the common
council of the village of Grass Lake to approve relator's
application and bond to conduct a saloon.  An order deny-
ing the writ is reviewed by relator on certiorari.
Affirmed.

*Frank L. Blackman*, for appellant.

*Wilson & Cobb*, for respondent.

STONE, J.   This is a proceeding by certiorari to review the action of the circuit court in refusing to grant to the relator a mandamus.   The village of Grass Lake is in the county of Jackson.   For two years before the 1st day of May, 1911, the local-option law, so called, was in force in that county.   On the 1st day of May, 1911, the board of supervisors passed a resolution repealing the local-option law within the limits of that county in pursuance of a vote of the electors held according to law.   We state in chronological order the history of the proceedings here involved, as we gather them from the pleadings in the case.

On the 10th day of April, 1911, relator filed with the clerk of the village of Grass Lake an application for a license to carry on the business of selling intoxicating liquors at retail within the village during the year beginning May 1, 1911, accompanied by a bond in the penal sum of $3,000, with the Michigan Bonding & Surety Company as surety.   At a meeting of the village council held on April 11, 1911, the application was read by the clerk to the council, and, after some discussion, the bond was laid upon the table.   A motion was made and carried that the penalty of the bond be fixed at $6,000.   At the same meeting an ordinance to suppress saloons in the village of Grass Lake was read, and on motion was laid upon the table.   On April 20, 1911, the said village council met and passed an ordinance prohibiting saloons in the village of Grass Lake.   Without setting forth the ordinance in full, it is sufficient to say that it complied with the provisions of subdivision 7, § 2769, 1 Comp. Laws. This ordinance was to take effect on the 10th day of May, 1911.   It appearing that the application of the relator, which was filed with the council on the 10th day of April, did not comply with the provisions of the statute of 1909, a new application, which seems to have complied with the statute, was made and filed with the clerk of the coun-

cil by the relator on the 22d day of April, 1911. No further bond was filed. At a meeting of the council held on the 28th day of April, 1911, the last-named application of the relator was refused. On the 3d day of May, 1911, the relator filed a further petition with the clerk of the said council, calling attention to the said action of the board of supervisors on May 1, 1911, and requesting the council to rescind the resolution passed at its last meeting. At a meeting held on the 4th day of May, 1911, the said council refused to grant the petition of relator. On the 8th day of May, 1911, relator presented a petition to the circuit judge praying that a mandamus should issue, requiring said council to meet, within a reasonable time, for the purpose of considering and acting upon the application of relator, and to require said council to approve the same. An order to show cause was granted. Respondent answered, setting up, among other things, that each of its acts in the premises had been lawful, and within the power conferred upon the village of Grass Lake by the statute under which it was incorporated. The mandamus proceedings came on to be heard before the circuit court on the 22d day of May, 1911, and the writ was denied. Whereupon relator petitioned this court for the writ of certiorari to review said action.

There does not seem to be any question that the village of Grass Lake was reincorporated under the general village statute (§ 2941, 1 Comp. Laws). Subdivision 7, § 2769, 1 Comp. Laws, grants to the councils of villages, among other things, the power "to suppress saloons for the sale of spirituous and intoxicating liquors." Neither is there any question, we think, that the regulation or suppression of the sale of intoxicating liquors in this State is within the police powers of the State or municipality. We quote from Cooley's Constitutional Limitations (7th Ed.), pp. 399, 400, as follows:

"It has also been intimated in a very able opinion that the police power of the State could not be alienated even by express grant. And this opinion is supported by those

cases where it has been held that licenses to make use of property in certain modes may be revoked by the State, notwithstanding they may be connected with grants and based upon a consideration. *Thorpe* v. *Railroad Co.*, 27 Vt. 140–149 (62 Am. Dec. 625). The legislature cannot make an irrepealable contract as to that which affects public morals or public health so as to limit the exercise of the police power over the subject-matter. [*Butcher's Union Co.* v. *Crescent City Co.*, 111 U. S. 746 (4 Sup. Ct. 652)]. * * * See upon this subject [note 1, p. 400, citing the following authorities]: *Brick Presbyterian Church* v. *City of New York*, 5 Cow. (N. Y.) 538; *Vanderbilt* v. *Adams*, 7 Cow. (N. Y.) 349; *State* v. *Sterling*, 8 Mo. 697; *Hirn* v. *State*, 1 Ohio St. 15; *Calder* v. *Kurby*, 5 Gray (Mass.), 597; *Brimmer* v. *City of Boston*, 102 Mass. 19. The power of the State, after granting licenses for the sale of liquors and receiving fees therefor, to revoke the licenses by a general law forbidding sales, has been denied in some cases. See *State* v. *Phalen*, 3 Har. [Del.] 441; *Adams* v. *Hackett*, 27 N. H. 289 (59 Am. Dec. 376); *Boyd & Jackson* v. *State*, 46 Ala. 329. But there is no doubt this is entirely competent. *Freleigh* v. *State*, 8 Mo. 606; *Metropolitan Board of Excise* v. *Barrie*, 34 N. Y. 657; *City of Baltimore* v. *Clunet*, 23 Md. 449; *Fell* v. *State*, 42 Md. 71 (20 Am. Rep. 83); *Commonwealth* v. *Brennan*, 103 Mass. 70; *McKinney* v. *Town of Salem*, 77 Ind. 213; *Moore* v. *City of Indianapolis*, 120 Ind. 483 (22 N. E. 424); *La Croix* v. *County Commissioners*, 50 Conn. 321 (47 Am. Rep. 648); *Brown* v. *State*, 82 Ga. 224 (7 S. E. 915); *Boston Beer Co.* v. *Massachusetts*, 97 U. S. 25; *State* v. *Cooke*, 24 Minn. 247 (31 Am. Rep. 344); *Pleuler* v. *State*, 11 Neb. 547 (10 N. W. 481). * * * Grants of the right to establish lotteries are mere privileges, and as such are revocable. *Bass* v. *Mayor of Nashville*, Meigs [Tenn.], 421 (33 Am. Dec. 154); *State* v. *Morris*, 77 N. C. 512; *Stone* v. *Mississippi*, 101 U. S. 814; *Justice* v. *Commonwealth*, 81 Va. 209; *State* v. *Woodward*, 89 Ind. 110 (46 Am. Rep. 160); *Douglas* v. *Kentucky*, 168 U. S. 488 (18 Sup. Ct. 199). * * * In short, the State cannot by any legislation irrevocably hamper itself in the exercise of its police power. *Toledo, etc., R. Co.* v. *City of Jacksonville*, 67 Ill. 37 (16 Am. Rep. 611); *Chicago Packing, etc., Co.* v. *City of Chicago*, 88 Ill. 221 (30

Am. Rep. 545); *Fertilizing Company* v. *Hyde Park*, 97 U. S. 659; *People* v. *Commissioners*, 59 N. Y. 92."

The same eminent author, at page 849, uses this language:

"These State laws, known as prohibitory liquor laws, the purpose of which is to prevent altogether the manufacture and sale of intoxicating drinks as a beverage, so far as legislation can accomplish that object, cannot be held void as in conflict with the fourteenth amendment. And in several cases it has been held that the fact that such laws may tend to prevent or may absolutely preclude the fulfillment of contracts previously made is no objection to their validity. Any change in the police laws, or indeed in any other laws, might have a like consequence.

"The same laws have also been sustained, when the question of conflict with State constitutions, or with general fundamental principles, has been raised. They are looked upon as police regulations established by the legislature for the prevention of intemperance, pauperism, and crime, and for the abatement of nuisances."

See note 2, citing *People* v. *Hawley*, 3 Mich. 330; *Reynolds* v. *Geary*, 26 Conn. 179. "Contracts cannot hamper or impede the State power of police"— citing *Boston Beer Co.* v. *Massachusetts*, *supra*. See, also, note 3, where many more cases are cited, including *People* v. *Gallagher*, 4 Mich. 244. See, also, *Whitney* v. *Grand Rapids Township Board*, 71 Mich. 234 (39 N. W. 40); Black on Intoxicating Liquors, §§ 84, 127, 189, 190; Joyce on Intoxicating Liquors, at pages 94–96, 105–107; Woollen & Thornton on the Law of Intoxicating Liquors, § 428, and cases cited; 23 Cyc. pp. 92, 108, 110, 111. Many more authorities might be cited to the same effect.

The exercise of this police power is peculiarly and especially proper in respect to the liquor traffic, as the results which follow from the use of intoxicating liquors often tend to disturb the public peace, and frequently result injuriously to the health and morals of those who partake thereof, and to the safety and health of others.

Therefore the power of the State to control and regulate the traffic in such liquors is one which is generally recognized, and its exercise is a proper exercise of what is known as the police power. The validity of such an ordinance has been passed upon by this court in a number of cases. In *Post* v. *Village of Sparta*, 58 Mich. 212 (25 N. W. 52), the writ of mandamus was asked for to compel the common council of that village to approve a liquor dealer's bond. The council, without referring the bond to any committee, rejected it for no other apparent reason than that the village had an ordinance which absolutely prohibited liquor dealing within its bounds. The court denied the writ of mandamus on the ground that the village was organized under the general incorporation law which was so amended in 1883 (Act No. 52, Pub. Acts 1883) as to give the villages organized thereunder the right to suppress saloons.

The validity of the act in question was recognized in *Hawkins* v. *Litchfield Common Council*, 120 Mich. 390 (79 N. W. 570), this court holding that the law contemplated formal action by ordinance, and that a resolution of the village council was not sufficient. See, also, *Rattenbury* v. *Northville Common Council*, 122 Mich. 158 (80 N. W. 1012); *Timm* v. *Common Council*, 149 Mich. 323-325 (112 N. W. 942); *Lake* v. *Village of Cedar Springs*, 162 Mich. 569 (127 N. W. 690); *Boos* v. *Scudder*, 163 Mich. 678 (127 N. W. 1040, 129 N. W. 193). In *Lake* v. *Village of Cedar Springs, supra*, the circumstances were quite similar to the instant case. There the relator filed his application for a license with the respondent on March 23, 1910. The council on April 11th passed an ordinance suppressing saloons for the sale of spirituous and intoxicating liquors in the village, and provided it should take effect on May 1, 1910. The council refused to act upon the relator's application, and relied on the ordinance as a defense to the proceeding. It will be noted that in that case the ordinance was to take effect on May 1st, while here the ordinance did not take

effect until May 10th. The relator relies upon the case of *Warner* v. *Village of Lawrence*, 62 Mich. 251 (28 N. W. 844). We think that case can be distinguished. In that case the ordinance took effect on the 3d day of May, and there were two days in which, had the bond been approved, the relator could have engaged in the traffic, and the ordinance could have no effect before that date. The reason that the common council in that case had refused to act when it should have acted upon the bond may have been a reason why the writ was granted, in order that the constitutional validity of the ordinance might be raised; the court using this language:

" We do not think it proper under such circumstances to pass upon the constitutional question."

The constitutional question seems now to be thoroughly settled, and the validity of such ordinances has been since frequently passed upon by this court. It is true that in the instant case the ordinance did not take effect until May 10th; and, while it may have been the duty of the respondent to approve the application of relator filed on April 22d, yet, as the hearing before the circuit judge did not take place until the 22d of May, when the ordinance was in full force and effect, we think the circuit judge was fully justified in refusing the writ under the rule laid down in the following cases: *Preferred Tontine Mercantile Co.* v. *Secretary of State*, 133 Mich. 395 (95 N. W. 417), where it was held that mandamus would not issue to compel the secretary of State to file the articles of association of a foreign company, where, subsequent to the filing of the petition, a statute had become operative under which the rights claimed by relator had been abrogated. See, also, *Rose* v. *Ann Arbor Common Council*, 134 Mich. 102 (95 N. W. 1133), where the legislature had prohibited the sale of intoxicating liquors within a certain portion of the city, after relator's petition to the common council for the approval of the bond for the sale of liquors within such district, mandamus to compel the council to

approve such bond was denied; the court saying: "There is therefore no occasion to determine what relator's rights were under the former law"—citing the case last above referred to.

This court has repeatedly held that the writ of mandamus is a discretionary writ, and that it must clearly appear that the party to whom it is directed has the power to execute it, otherwise it will not be issued. See *Turnbull* v. *Giddings*, 95 Mich. 314 (54 N. W. 887, 19 L. R. A. 853), and cases cited. The court should not be required to issue a mandamus where its effect would be of no avail or idle. In other words, the court should not be asked to do an idle thing. There was no time after the hearing in which saloons could be legally conducted in the village. In our opinion this case is controlled by the doctrine of *Lake* v. *Village of Cedar Springs, supra.*

The order and judgment of the circuit court in refusing to grant the writ is affirmed.

OSTRANDER, C. J., and BIRD, HOOKER, and MOORE, JJ., concurred.