AARON MONAGHAN, GUARDIAN, ET AL. v. THE AGRICULTURAL FIRE INSURANCE COMPANY OF WATERTOWN, N. Y.

*Joint insurance—Infants insured—Challenges—Fraud.*

1. A contract with and for the benefit of an infant, such as a contract for insurance, is not void but only voidable and that at the infant's election, since infancy gives a personal privilege of which no one but the infant can take advantage while he lives.

2. The widowed mother of minor children is their natural guardian; and if there is no guardian for their estate, she has authority to apply in their behalf for insurance, and to pay the premium.

3. The rule that a stranger to the consideration cannot sue on the contract does not apply where the contract was made directly with him and he is therefore in privity with the defendant.

4. It is immaterial that a trial judge gives a wrong reason for a right ruling so long as it does not prejudice the party overruled.

5. It is within the discretion of a court to sustain a challenge for cause where the juror is shown to have been seen talking with the agent of the adverse party and the agent suspended the conversation on the appearance of opposing counsel.

6. Prejudice disqualifies a juror, and a party entitled to peremptory challenges should be allowed to ask any reasonable questions that will tend to disclose it; as, *e. g.* which way the juror would be inclined if the evidence was evenly balanced.

7. A declaration on an insurance policy averred in one count that plaintiffs were the absolute owners of the premises insured, and in another that they held them under a will. *Held*, that proofs showing that they held under a deed instead were admissible under the former

count; and indeed, as the fact of ownership was the material question, the admission of the proof would not have been error in any case, and such an averment of the source of title would be surplusage and would be amendable even after verdict.

8. Where the material fact is ownership it is unimportant that an applicant for insurance states that he holds under a will when in fact he holds under a deed.

9. Plaintiff in an action on an insurance policy made affidavit that certain property had been burned, but on search it was found concealed. A witness for defendant testified as to what plaintiff said while this search was going on, but it was proper to exclude his testimony as to what the plaintiff's mother, a stranger to the case, had said on that occasion.

10. An insured person, in proving loss by fire, swore to the destruction of a sewing machine, but in an action on the policy a neighbor who was at the fire testified that she saw the machine standing on the ground, and that next day plaintiff's hired man left it at witness's house for safe keeping. *Held*, proper to ask what he said on doing so, as part of the res gestæ, and as bearing on the question whether he also had sworn falsely.

11. In an action on a fire insurance policy, where plaintiff was suspected of false swearing as to losses, a witness was asked whether she had not seen plaintiff since the fire and had some conversation with her in which plaintiff had warned witness not to say anything about the whereabouts of some of the property. *Held*, that the question was properly excluded in the absence of any showing of its materiality.

12. Where the plea in an action on an insurance policy charged plaintiff with burning the property the remark by the trial judge that the course of testimony was the same as if plaintiff were on trial for arson was not open to exception if it did not lead the jury to infer that defendant's proofs must preclude any reasonable doubt.

13. A policy of insurance taken out by a widow upon her property and that of her minor children is a joint policy even though the interests be several; and suit thereon must be brought by all the insured except where any of them have assigned to others. And if the right of action is barred as to any it is as to all, and what would be a defense against one would be as much so against his assignee. It is therefore a complete bar to recovery if any one of the insured has attempted to defraud the company by non-compliance with conditions or by false proofs of loss, and in an action on the policy it is admissible to inquire whether the widow had not made such attempt.

14. Where a civil case turns upon a charge of criminal misconduct it is not proper for the court to charge the jury that they must be "well" satisfied of the truth of the charge; a preponderance of evidence is enough. But this must overcome the presumption of innocence.

Error to Saginaw.   (Gage, J.)   Jan. 18.—Apr. 9.

Assumpsit.   Defendant brings error.   Reversed.

*Wisner & Draper* for appellant.   Infant beneficiaries cannot sue on a policy of insurance: *Work v. Merchants' & Farmers' Ins. Co.* 11 Cush. 271; *Clay Ins. Co. v. Huron S. & L. Co.* 31 Mich. 346; *Hartford Ins. Co. v. Davenport* 37 Mich. 609; *Armitage v. Widoe* 36 Mich. 129; *Fonda v. Van Horne* 15 Wend. 631; *Trueblood v. Trueblood* 8 Ind. 196; Tyler on Infancy 42; when two persons contract that one shall pay money to a third, such third person cannot sue on the contract in his own name: *Turner v. McCarty* 22 Mich. 265; *Pipp v. Reynolds* 20 Mich. 89; *Halsted v. Francis* 31 Mich. 113; *Hicks v. McGarry* 38 Mich. 667; a claim for insurance is forfeited by misrepresentations as to loss: *Johnson v. Cont. Ins. Co.* 39 Mich. 35; *Moore v. Virginia F. & M. Ins. Co.* 26 Am. R. 378; *McGowan v. Peoples Ins. Co.* 11 Ins. L. J. 209; *Cushman v. Lond. & Lis. Fire Ins. Co.* 5 Allen (N. B.) 246; the contract of insurance is entire and if it fails in part is wholly invalid: *Bleakley v. Niagara Dist. Ins. Co.* 16 Grant Ch. U. C. 198; *Bowman v. Franklin Fire Ins. Co.* 40 Md. 620; *Hinman v. Hartford Fire Ins. Co.* 36 Wis. 159; *Plath v. Minn. Farm. Mut. Ins. Co.* 23 Minn. 479; *Gore Dist. Mut. F. Ins. Co. v. Samo* 2 Can. S. C. 411; *Baldwin v. Hartford Ins. Co.* 10 Ins. L. J. 433; conviction beyond a reasonable doubt is not necessary in a civil case: Cooley on Torts 208; *Knowles v. Scribner* 57 Me. 496.

*W. S. Tennant* for appellee.   A juror is properly excused if it is apparent that he may have been prejudiced by an agent of a party: *Atlas Mining Co. v. Johnston* 23 Mich. 36; *Grand Rapids Boom Co. v. Jarvis* 30 Mich. 312; *People v. Carrier* 46 Mich. 444; the questions to be submitted to a jury are "particular questions of fact:" How. Stat. § 7606; and such as involve legal consequences: *Dubois v. Campau* 28 Mich. 306; *Crane v. Reeder* 25 Mich. 303; *Swift v. Plessner* 39 Mich. 178; *Harbaugh v. Cicotte* 33 Mich. 241; *Sheahan v. Barry* 27 Mich. 218; if insurance is made for various persons, whether they have several or joint interests, the policy is good for all: *Castner v. Farm. Mut. F. Ins. Co.* 46 Mich. 17; *Foster v. U. S. Ins.* 11 Pick. 85; if the insurer does not call for an accurate statement of title, an incorrect statement immaterial to the risk will not avoid the policy: *Wyman v. Peoples Ins. Co.* 1 Allen 301.

CHAMPLIN, J.    Plaintiffs are minors and children of John Monaghan, deceased.    In 1876, John Monaghan being the owner of eighty acres of land, conveyed the north half thereof to his father Patrick Monaghan, but remained in possession and lived upon it with his family until his death, which occurred in the early part of the year 1879.    On the 6th day of January of that year he made his last will, by which, after directing the payment of his debts, he directed his executors to sell whichever forty acres of his land would sell the best, and pay first the mortgages then against his place, and then certain debts which he named.    He also stated in his will : " The other forty acres to remain as a home for my wife and children, unless my wife Catharine should marry ; then property to be kept for my children."    He made no disposition of his personal estate if he had any.    January 31st, 1880, Patrick Monaghan conveyed the north forty acres to the minor children of John Monaghan, and they with their mother, Kate Monaghan, continued to reside in the house upon this forty acre tract until it was destroyed by fire, in September, 1880.

On August 4th, 1880, Kate Monaghan applied for insurance to the agent of defendant.    The application was made in behalf of Kate Monaghan, the mother, and Sarah, Jennie and Willie Monaghan, minor heirs.    To the question, " What is your title to or interest in the property ? " the answer was, " Willed."    The application was made out by the agent from information derived from Mrs. Kate Monaghan.    The defendant issued a policy by which in consideration of $14.70, it insured Kate Monaghan, Sarah, Jennie and Willie Monaghan, minor heirs, against loss or damage by fire or lightning to the amount of $1650, as follows :

$400 on dwelling-house.
$300 on household furniture therein.
$200 on family provisions and wearing apparel therein.
$275 on barn No. 1.
$350 on hay and grain in barn No. 1.
$ 75 on farming utensils in said barn.
$ 50 on harness therein, wagons and sleighs therein.

$1650, total.

The policy contained the usual stipulations and conditions relative to proof of loss, and of forfeiture in case of any misrepresentations, concealment, fraud or false swearing in any statement or affidavit in relation to loss or damage. A fire occurred about the middle of September, 1880, which destroyed the dwelling-house, of which the company was duly notified. It is claimed by the defendant that on the second day of October, 1880, Mrs. Kate Monaghan made an affidavit in which she set forth in detail what property belonging to her was saved from the fire, and what was destroyed thereby, and it claims that in this affidavit she knowingly, and with intent to defraud the company, falsely swore that certain articles of personal property belonging to her were entirely destroyed by the fire, among them a certain sewing-machine; and on the same day, as she claims, by threats of prosecution by the agents of defendant, and by false statements to her, defendant obtained a release, under seal, of all actions against defendant, which was signed by her, and as the guardian of the minor heirs of John Monaghan, deceased; and thereafter the defendant refused to settle or pay any loss occasioned by the fire.

On the 17th day of November, 1880, James Murphy was duly appointed the guardian of the minors, and on the 18th of December following he made out, in behalf of the minors, and forwarded to the company, proofs of loss of the dwelling insured by the policy. In this proof of loss it is stated that Kate Monaghan, being the mother of said minor heirs, had an interest in the personal property thereby insured, and the said minor heirs being the owners of the real estate and dwelling-house therein insured, and that the building insured belonged to the said minor heirs of John Monaghan, deceased, and that said Kate Monaghan had no interest therein save, possibly, a dower interest or right of possession during their minority, and that she owned the personal property insured, and no other person had any interest in said property. It then states how it was occupied at the time of the fire, when it occurred, the amount of the loss on the dwelling, and that the fire did not originate by any act, design or procurement

on his part, or in consequence of any fraud or evil practice done or suffered by any of said minor children or Kate Monaghan.   On the 17th day of March, 1881, Kate Monaghan assigned to her children, Sarah, Willie and Jennie, all of her right, title and interest in and to all claims against defendant, by reason of the issuing of the policy, and all her rights thereunder.   The loss not having been paid within the sixty days after the guardian furnished proofs of loss, he commenced this action to recover the amount insured on the dwelling.

The defendant contends that there is no valid contract of insurance between the parties, for the reason that the minors were incapable of entering into such contract ; that contracts of insurance must be mutual, and if the defendant could not have enforced payment of the premium, neither could the company be compelled to perform its contract to indemnify. In the case of *New Hampshire Mut. Fire Ins. Co. v. Noyes* 32 N. H. 345, it was held that an infant who had insured his stock of goods was not liable to the company on his premium note, *as for necessaries*, where the infant interposed the plea of infancy; but the contract of insurance was not held void.   Many contracts of infants are not void, but voidable merely, in which case infancy is a personal privilege of the infant of which no one can take advantage but the infant himself while living.   Contracts which are manifestly for the benefit of the infant are not void, but voidable merely. The contract of insurance is of this class, and although entered into between the defendant and the minors jointly with their mother is binding on the defendant.   There was no fraud or concealment practiced upon the defendant with respect to the infancy of the parties it was contracting with ; the policy describes them as minors.   This defense is not open to the company.

The circuit judge viewed the contract as one entered into between Kate Monaghan and the defendant for the benefit of herself and children.   He instructed the jury that the three children were minors and of such tender years that

they were incapable of entering into the contract; that the contract was between her and the insurance company for the benefit of the children, with reference to the property named in the policy, and should be construed as a promise on the part of the insurance company to pay to the beneficiaries named in the policy, as their interests might afterwards appear in case of loss, such sums as they might be entitled to, not exceeding the amount insured. We can see no reason for giving to the policy a different meaning than that which is plainly expressed in the instrument. The application for the insurance was made by Kate Monaghan, the mother of the children, for herself and for them. She was their natural guardian, and at this time there was no guardian appointed over their estate. From her relationship to the children a sufficient authority may be presumed to qualify her to make the application and to pay the consideration to the company for their promise to indemnify. The general rule undoubtedly is that a plaintiff in an action on a simple contract must be the person from whom the consideration of the contract actually moves, and that a stranger to the consideration cannot sue on the contract. *Mellen v. Whipple* 1 Gray 321. But whenever there is a privity of contract between the plaintiff and the defendant, as when the promise is made directly to the plaintiff, although the consideration for the promise proceeds from a stranger, the defendant is liable to the plaintiff in an action upon the contract because of such privity.

In this case there was such privity of contract. The promise was made by the company directly to Kate Monaghan and the plaintiffs jointly, and no reasons exist why the promisees may not maintain an action upon the policy. The circuit judge rightly held that the plaintiffs could maintain the action, and it is immaterial that he assigned an erroneous reason therefor. The defendant was in no wise prejudiced thereby.

A juror was called and sworn touching his competency, and upon examination by counsel for plaintiff stated that he

had a conversation that day with the agent of defendant, who told him there was a case, he thought, of incendiarism, and that they were talking about another case previous to that, which happened in East Saginaw, that he was a little concerned about, and he told the agent he thought he had not done right about that; that he noticed counsel for plaintiff pass him, and the agent quit talking until he had passed up stairs, and then immediately commenced talking about the case after he had passed. Whereupon the counsel for plaintiff challenged the juror for cause, and against the objection of the defendant's counsel the court excused him from sitting. We think the court was acting entirely within the limits of its discretion in sustaining the challenge. *Atlas Mining Co. v. Johnston* 23 Mich. 36; *People v. Carrier* 46 Mich. 444.

Another juror being examined on oath as to his competency, was asked by defendant's counsel: "Suppose, in this case, after the evidence is all introduced, you should believe that it was evenly balanced, so that there was as much for the plaintiff as for the defendant, which way would you be inclined to lean—against or in favor of the company?" This was objected to by the plaintiff's counsel, for the reason that he would probably be guided by the court. Whereupon the court said: "Of course, the party that has affirmation of an issue must produce a preponderance of evidence, and if the evidence was evenly balanced they would be obliged to find against the party that had the affirmative of the issue. I don't think that the question is proper. I don't permit the juror to answer it." The same question was put to another juror, and the court told the juror that he need not answer it. These questions were put to the jurors by counsel for defendant for the purpose of determining what peremptory challenges he would avail himself of. The question was well calculated to call from the juror the bias of his mind toward the party, and to detect whether he entertained any prejudice respecting him.

Wherever there is an existing bias or prejudice it should disqualify, for prejudice is a state of mind which, in the eye

of the law, has no degrees. *People v. Reyes* 5 Cal. 347. It is the evident intent of the law to secure a jury that shall come to the consideration of the case unaffected by any previous judgment, opinion or bias with respect either to the parties or subject-matter in controversy, and it is important to the rights of parties that they may be permitted inquiries which may be the means of discovering facts which will justify the exclusion of a juror. The success of a challenge depends upon eliciting such information from the juror himself, as well as from other sources, as to his state or condition of mind, as will enable a judgment to be formed by the court as to his competency. For this purpose the law subjects the juror to an examination on oath, when questions are put to test his competency. If the juror had been permitted to answer the question, and he had replied that he would, in the case put, lean in favor of the plaintiff or against the defendant, can it be doubted that he could have been challenged for cause ? He would have shown himself to have been disqualified, and no statement from him that he could render an impartial verdict would have removed the disqualification. "Nor can it be said that instructions from the court would correct the bias of jurors who swear that they incline in favor of one of the litigants." *Chicago & Alton R. R. Co. v. Adler* 56 Ill. 344. A party has a right to a certain number of peremptory challenges, and in order to exercise this right understandingly it is proper for him to ascertain as nearly as practicable the disposition of the juror toward him, and toward the subject-matter in controversy ; and any inquiry within reasonable limits which tends to bring to light any bias or prejudice entertained by a juror is proper. The questions propounded were proper, and the court erred in not permitting the juror to answer. *Chicago & Alton R. R. Co. v. Buttolf* 66 Ill. 347.

It is assigned as error that the court, against defendant's objections, admitted evidence tending to show the house was on land deeded to the plaintiffs, for the reason that their title to the property is averred to be by will, and proof of title by

deed does not tend to support the declaration. There are two counts in the declaration. The first does not aver the source of title of the plaintiffs, but alleges that they were the absolute owners of the premises destroyed; and the second count alleges that they are the absolute owners, and that they derived their title through the last will of their father. We do not think the objection well taken. The deed was admissible under the first count. Had both counts alleged the derivation of their title by will, it would not have been error to admit proof of title by deed. The fact of ownership was the material question. Any competent evidence to prove their ownership was admissible; and if the declaration set out their source of title with unnecessary particularity, it was amendable on the trial, or even after verdict.

The same remarks apply to the objection that the application stated that the title of the insured was by *will*, when the proof was that it was by deed.

The court committed no error in not permitting the witness Wrege to be asked what Mrs. Monaghan's mother said to one of the plaintiffs in the barn, while the witness was searching for articles concealed therein. The witness had been permitted to state what the plaintiff said on that occasion, and the record does not disclose how it could be material to show what Mrs. Monaghan's mother said.

Mrs. Monaghan had sworn in her affidavit to the destruction of the sewing-machine by the fire, and defendant proved by a witness, who was a neighbor of Mrs. Monaghan, that she was at the fire and saw the sewing-machine standing on the ground near where the fire was burning, and the next morning Mrs. Monaghan's hired man brought the sewing-machine to witness' house and left it there, and she was asked: "What did he say when he brought it there?" Counsel for plaintiffs objected to it as incompetent, irrelevant and immaterial. The record proceeds:

*By the Court.* It would not be proper if she were on trial for arson.

*Defendant's Counsel.* She is not on trial for arson. .

*The Court.* The course of testimony is the same.

*Defendant's Counsel.* I propose to show what the hired man said when he brought the sewing-machine to the house.

The court refused to allow the question to be put or answered.

To the remarks of the court above stated, and to the ruling of the court, defendant duly excepted. The examination of the witness then proceeded, and the following occurred:

*Question.* After the machine came to your house did you see Mrs. Monaghan? ·

*Answer.* I don't remember seeing her.

*Q.* Let me see if I can refresh your recollection. Did you have any conversation with her after the fire, in which she told you not to say anything about the machine being at your mother's?

*A.* No, sir.

*Q.* Did you have any such conversation with any one? (Objected to as incompetent and immaterial by plaintiff's counsel.)

*By the Court.* The plea charges her with the burning, as I understand it. The proof is the same as if an information was filed against her for burning it down. In that case the statements made by any other persons are not evidence.

*Defendant's Counsel.* If they were her agents?

*The Court.* That must first be shown.

*Defendant's Counsel.* I think we have shown it.

*By the Court.* The court holds that there is not sufficient testimony to show that the hired man was the agent of Kate Monaghan at the time of the fire; therefore the statements are immaterial.

To which ruling, and to the remarks of the court, defendant, by its counsel, did then and there except.

At this stage of the case the defendant had introduced evidence tending to prove that the fire was first reported to defendant's agent by the hired man; that Mrs. Monaghan told the agent that the hired man first discovered the fire; that of the contents of the house all that was saved was a cooking stove, clock, some chairs and a trunk with some clothing in it; that a sewing machine that cost $85 was burned, and all the other articles insured, with the above exceptions; that afterwards she and the hired man made affidavits that

all that was saved from the fire was 1 cook stove, 1 sitting-room stove, 6 wood-seat chairs, 1 clock, 1 lantern, and a few articles of children's clothing worth not to exceed one dollar, and that articles were destroyed which cost $860.75, including the sewing machine, carpets, etc. Defendant had also given evidence tending to prove that after Mrs. Monaghan and the hired man had sworn to the affidavits, Mr. Kinney made an appointment with her to meet her later in the day, and that he, with one Wrege, a deputy sheriff, then went to the premises for the purpose of searching for articles claimed to have been lost; that Mr. Kinney and Wrege found concealed in a barrel of oats a carpet; under the straw in the bay of the barn they found a bureau with the drawers locked full of linen and clothing; in a barrel covered up with straw they found a feather bed, and in a box under the straw they found a quantity of Mrs. Monaghan's clothing and other articles; that they also found covered up with straw, a table, bedstead and other articles; that in an out-door cellar they found a part of the doors and windows of the house that had no appearance of having been burned, and a large number of other articles; that they made a list of all the articles found.

The witness should have been permitted to state what the hired man said when he left the machine. It accompanied and was part of the act of the man in leaving the machine, and was relevant upon the question of false swearing by the hired man. The other question, as to her having had a conversation with any one, was preliminary in character, but, without some proposition showing the materiality of the proposed proof, was rightly excluded.

We do not think that the remarks of the court relative to the course of the proof being the same as if Mrs. Monaghan was on trial for arson, are subject to the exception taken by defendant. The court evidently did not refer to the amount of proof required to sustain the plea, but that it was substantially the same line of proof required as if she was being tried on the charge of arson. If an inference could be drawn from the language used that might, perhaps, have led

the jury to infer that the defendant was required to have produced the same conclusive evidence of guilt that would be essential if Mrs. Monaghan had been on trial for arson, the exception would have been well taken. *Farmers' Mutual Fire Ins. Co. v. Gargett* 42 Mich. 292. But this is not the import of the language used and no inference can be drawn from it that the defendant was required to produce evidence of her guilt which should convince the jury beyond a reasonable doubt.

Defendant also gave evidence tending to prove that Mrs. Monaghan caused the most of the furniture and other articles in the house to be removed therefrom and concealed in the barn and elsewhere, before the fire; that part of the doors and windows belonging to the house were taken off the house and concealed before the fire; and gave evidence tending to prove that the affidavits Mrs. Monaghan and hired man made were false, known to be so by them, and that they were made to defraud the defendant; and that the house was purposely burned by Mrs. Monaghan and the hired man, Rory, to defraud the defendant.

Defendant further gave evidence tending to prove that after its agents had found the property concealed, as before stated, Mr. Kinney told Mrs. Monaghan of what they had found; charged her with burning the house; that she admitted it; that she was then told the company would not pay her anything, and asked to sign a release, which she did, (said release was received in evidence,) and she was told to bring her policy to the office and surrender it; that subsequently she had her hired man come to the defendant's office in East Saginaw and deliver the policy to Mr. Kinney. Defendant further gave evidence tending to prove that Mrs. Monaghan told Kinney that she was guardian for the children.

It was conceded by plaintiff's counsel that the sewing machine the hired man took to Mrs. Hemmeter's after the fire was the same sewing machine named in the affidavit of Mrs. Monaghan.

The plaintiffs introduced evidence tending to rebut the case made by the defendant. After the evidence was closed, the counsel for defendant asked the court to submit to the jury several questions of fact. The court selected five questions from the number submitted, and refused to submit the remainder. Those which were submitted, and the answers thereto as found by the jury, were as follows:

"*First Interrogatory*. Did the plaintiffs, or any of them, in person apply for and obtain the insurance policy in evidence?

*Answer*. No.

*Second Interrogatory*. At the time the policy in evidence was issued were each of the plaintiffs under the age of 21 years?

*Answer*. Yes.

*Third Interrogatory*. What was the age, at the time the policy was issued, of Willie, of Sarah, of Jennie?

*Answer*. Sarah, 4; Willie, 7; Jennie, 9.

*Fourth Interrogatory*. When Kate Monaghan, now Mrs. McNamara, applied for the insurance, did she tell Mr. Moffit that she and the children named in the policy owned the property insured?

*Answer*. Yes.

*Tenth Interrogatory*. Did Kate Monaghan, now Mrs. McNamara, purposely cause or procure the house to be burned for the purpose of defrauding the defendant?

*Answer*. No."

All the other questions the court held to be immaterial.

The following are among the questions rejected:

14. Did Kate Monaghan, now Mrs. McNamara, for the purpose of getting paid for property she knew had not been burned, falsely represent to the agent of defendant, Mr. Kinney, that such property was destroyed by the fire which destroyed the house?

15. Did Kate Monaghan, now Mrs. McNamara, swear to the truth of the facts stated in the paper in evidence, purporting to be her affidavit, sworn to before D. G. Peck, on the second day of October, 1880?

16. Did not Kate Monaghan, now Mrs. McNamara, know at the time she made the affidavit, that what she swore to therein concerning the loss of the articles named therein was false?

17. Did not Kate Monaghan, now Mrs. McNamara, know that she was swearing falsely in stating that the household furniture and other articles named in her affidavit had been burned?

18. Did she not know she was swearing falsely in stating that the policy was burned?

19. Did not Kate Monaghan make the affidavit for the purpose of cheating and defrauding the defendant?

These questions were material and proper if the plaintiffs are affected by the wrongful acts of Mrs. Monaghan after the fire. And this depends again upon the question whether the contract is divisible.

When the insurance was obtained nothing was said as to the precise nature of the interest, whether separate or joint, in the property insured. Nor was it necessary. The policy was good for all, whether their interests were joint or several. *Castner v. Farmers' Mut. Fire Ins. Co.* 46 Mich. 18. But in this case the premium was not apportioned, but was paid as a whole as a consideration of the whole insurance upon the property. We can see good reasons in this case for holding the contract for insurance to be joint and not several, which might, and probably did, influence the defendant in entering into it. Mrs. Monaghan was the only adult party among the insured, and the one upon whom the defendant would rely to make the proper proofs of loss in case of fire; and the only one it could hold to perform the conditions of the policy. We are clearly of opinion that no action could be brought by any of the insured, less than the whole, to recover a loss under this policy, unless in a case where the interests of one had been assigned to the other joint contractors. And if the right of action has become barred as to one of the joint contractors, it has to all of them. It follows that the plaintiffs, by obtaining an assignment of Mrs. Monaghan's claim and interest in the policy, can stand in no better position than they would be in had the action been brought in the names of all the joint contractors; and whatever would be a defense were she one of the plaintiffs, is equally available when suit is brought by her assignees. Any attempt on her part to defraud the company by not complying with the con-

ditions of the policy, or any false swearing or concealment or fraud in reference to the proofs of loss, would defeat a recovery.

The questions above mentioned were material and proper under the view we have taken of this case.  The circuit judge instructed the jury that the contract of insurance was divisible, and if they found that the plaintiffs were the sole, unconditional owner's of the forty acres upon which the house stood, the promise of the company was to indemnify them for their several interests in it; and if Mrs. Monaghan did not set fire to the building, or cause it to be done, but, after this liability became to a certain extent fixed upon the company by the burning of the building, she conceived the idea that she could obtain more for the furniture, which was her property, that was insured, by claiming that the articles saved were in fact burned, that act on her part alone, or anything she may have done with regard to the furniture, would not affect the right of the children to receive the amount due to them on account of the loss by fire to the building.   This was erroneous; and the error consists in holding that the contract was divisible, and the rights of the parties insured became divided by the fire, although it may have been caused by the act of Mrs. Monaghan.   Besides, it was inconsistent with a previous portion of his instructions, wherein he charged the jury that the contract of insurance was subject to certain conditions, and that it was necessary for the parties to observe and keep all those conditions while the risk was running, and that it was incumbent on Mrs. Monaghan to have seen upon her part that they were kept and performed, and therefore it was very material in this case whether she, after obtaining the insurance, set fire to the building or procured it to be burned with intent to defraud the insurance company, and that, if she did, the plaintiffs could not recover.   Why was she bound to see that all the conditions of the contract were kept before the loss, and not afterwards?   Why, if she attempted a fraud upon the company by setting or causing the building insured to be set on fire, could the plaintiffs not recover, and yet

could recover if she attempted to defraud the company by violating the stipulations of the contract which provides that "any neglect to comply with these provisions, or any misrepresentation or concealment or fraud or false swearing in any statement or affidavit in relation to loss or damage, shall forfeit all claim upon the company, by virtue of this policy, and shall be a full bar to all remedies upon the same?" We can see no reason for the distinction. The attempt to defraud the company by any one of the insured, by the making of false affidavits in relation to loss, is a complete bar to a recovery upon the policy. *Johnson v. Continental Ins. Co.* 39 Mich. 35; *Moore v. Virginia F. & M. Ins. Co.* 28 Grat. 508.

The court, when instructing the jury with reference to the testimony introduced by the defendant in support of the defense that Mrs. Monaghan caused the building to be burned, said:

"In determining whether she caused it to be set on fire or not, I desire to remark to the jury that the charge, of course, is a very serious one. It charges her with a crime. It is a crime, under our statute, even if the buildings were her own; and the presumption of the law is that all persons are innocent of crime, until it is established by competent proof. That presumption of innocence attends Mrs. Monaghan in this case the same as it would in a criminal case—the same as if she were on trial for an offense. In a civil suit, however, where it is a question of dollars and cents, it is not necessary that the defendant who makes this charge should prove the case beyond a reasonable doubt. That is not necessary. That is necessary in a criminal case, but in a civil suit it is not necessary. The burden of the proof, however, is upon the defendant who makes the charge, and it is necessary that there should be a preponderance of proof to establish the truth of the charge satisfactorily to our minds. The charge is a serious one. You ought to scrutinize the evidence in support of it closely—more so than if it were a mere trifling charge. Perhaps you ought to be well satisfied of the truth of it, and you ought also to bear in mind that the charge is made as a defense to a claim against the defendant, and that the burden of proof is on them."

The defendant took exception to this portion of the charge, and has assigned error thereon.  The rule of law that the presumption of innocence attended Mrs. Monaghan in this case the same as if she had been on trial for the criminal offense of arson, and that it was not necessary to establish the charge against her, in the minds of the jury, beyond a reasonable doubt, is correctly laid down in the instruction given.  The defendant must establish by a preponderance of proof that the facts exist which would constitute the crime of arson; and there is no preponderance unless the testimony adduced is sufficient to overcome the presumption of innocence as well as to establish the guilt of Mrs. Monaghan.  But whenever sufficient evidence is produced to satisfy the jury that she burned or caused the house to be burned, with the intent to defraud the defendant, such evidence is sufficient to overcome the presumption of innocence, and no further proof is required.  We think the jury may have been led to believe that something more was required in order to convince them of the existence of the facts sought to be proved by defendant, than a mere preponderance of proof.  What would be the natural inference drawn by a jury when told that it is only necessary that there should be a preponderance of proof to establish the truth of the charge satisfactorily to their mind?  And then it is added that the charge is a serious one, and perhaps they ought to be well satisfied of the truth of it.  Would they not naturally infer that their minds should be free from doubt?  Is there no difference in being satisfied and being well satisfied of the truth of an assertion?  It was to such distinctions as this that this Court alluded when it stated, in *Elliott v. Van Buren* 33 Mich. 52, that "there is no rule of law which adopts any sliding scale of belief in civil controversies."

The judgment of the circuit court is reversed and a new trial ordered.

The other Justices concurred.