PEOPLE v. EBERLE.[1]

1. CONSTITUTIONAL LAW—INTOXICATING LIQUORS — LOCAL OPTION —PROHIBITION—POLICE POWER.
   It is well settled that the State, in the exercise of the police power, may regulate or prohibit the manufacture and sale of spirituous and intoxicating liquors within its territory.[2]

2. SAME—CONSTRUCTION OF STATUTES.
   The local-option law is a prohibitory law, limited to the terri-

[1] Removed by writ of error to United States Supreme Court.
[2] Constitutional right to prohibit sale of intoxicating liquors, see note in 15 L. R. A. (N. S.) 908.

tory of the counties which adopt it, and is governed by the same rules of construction as apply to statutes affecting the entire State.

3. SAME—MANUFACTURE OF STOCK ON HAND.

By causing loss and depreciation in value of property owned by a brewing company, such as beer in process of manufacture, the local-option act does not deprive the owner of his property without due process of law, in violation of article 2, § 16, Const. of 1909, as the risk of such loss is incidental to the nature of the business.

4. SAME—CRIMINAL LAW—INTOXICATING LIQUORS.

The manufacture of new stock to add to the old for the preservation of beer on hand at the time local option was adopted is a violation of law. 2 Comp. Laws, § 5412 *et seq.*

5. SAME.

An exercise of the police power in forbidding the use of property for purposes injurious to public health, morals or safety, is not an appropriation of property for public benefit, and is distinct from the exercise of eminent domain.

6. SAME — DISCRIMINATION AGAINST NONRESIDENTS — STATUTES — HOME GROWN PRODUCTS.

The amendment to the local-option law permitting the manufacture and sale of wine or cider from home grown fruits in quantities not less than five gallons is unconstitutional because it operates as a discrimination against citizens and products of other States. Act No. 183, Pub. Acts 1899. Nor is the amendment of Act No. 170, Pub. Acts 1903, constitutional, permitting the sale at wholesale of wine or cider manufactured in the county to persons residing outside the same.

7. SAME.

But since the act is complete in itself, capable of being executed independently of such amendments, it is valid and constitutional except as to the amendments.

8. SAME—SEARCHES AND SEIZURES.

The objection that the law provides for unreasonable searches and seizures is not sustained.

Exceptions before sentence from Jackson; Parkinson, J. Submitted October 21, 1911. (Docket No. 142.) Decided December 8, 1911.

Carl Eberle and Stephen H. Carrol were convicted of violating the local-option law.    Affirmed.

*Richard Price,* for appellants.

*Albert O. Reece,* Prosecuting Attorney, and *Frank L. Blackman,* Assistant Prosecuting Attorney, for the people.

McALVAY, J.    Respondents were convicted under the local-option law, adopted and in force in Jackson county, upon a charge that they "did manufacture brewed, malt, and intoxicating liquors, to wit, beer," contrary to the provisions of said law.    The case is before this court upon exceptions before sentence.

The facts are not in dispute.    No question is raised but that the local-option law, prohibiting, among other things, the manufacture of brewed, malt, and intoxicating liquors, was, at the time charged, in force in said county. It is admitted that respondents did manufacture the beer in question.

The defense is founded upon the propositions: (1) That the law, on account of certain of its provisions, is unconstitutional; (2) that such manufacture was not unlawful, because done for the sole purpose of preserving a large quantity of beer, to wit, 1,700 barrels, which they had lawfully manufactured, and had on hand at the time such law went into effect.

In order to understand the second contention properly, some of the undisputed facts must be stated.    Respondents were stockholders and officers of the Eberle Brewing Company, a Michigan corporation, which owned a brewing plant at Jackson, and had been for several years engaged in the manufacture of lager beer.    When the local-option law went into effect in Jackson county, on May 1, 1909, the company had on hand about 1,700 barrels of beer, which they had been unable to sell.    It appears that this beer would have become worthless and unmarketable, if a new brew were not made and introduced into it occasionally,

to keep it alive. The new beer was made and used only for this purpose. It was not then old enough to be in a fit condition to drink. The company, after the 1st of May, 1909, was manufacturing a temperance, nonalcoholic beer, for which some new machinery had been purchased, to be used in connection with the same vats and machinery theretofore used in the manufacture of lager beer. On September 11, 1909, there was a large quantity of this old beer on hand in the basement and storerooms of the brewery. The sheriff and his deputies on that date found six vats full of what was supposed to be beer in the process of fermentation. Two of these vats were filled with new lager beer, and three were filled with temperance beer. Samples of all kinds were taken for analysis. The temperance beer was found to contain no alcohol. The new and the old lager beer contained the percentage of alcohol usually found in lager beer.

Respondents requested the court to charge, in accordance with the contention above stated, that from the proof in the case it appeared that no beer had been manufactured after May 1, 1909, by respondents, except to preserve and protect their property, and was used only for that purpose, and respondents were within their rights, and not guilty; and, if such request was not given, then to charge that if the jury so found the facts to be, then the respondents would not be guilty as charged, and a verdict of not guilty should be returned. These requests were refused, and the court charged that under the law then in force the manufacture of beer, "no matter for what purpose it is manufactured, or what the reason is," was strictly prohibited, and if the jury found, beyond a reasonable doubt, that beer had been manufactured as charged, then respondents should be found guilty; otherwise they should be acquitted. Errors are assigned upon such rulings.

The constitutionality of the law is attacked upon several grounds:

(a) That it is in conflict with paragraph 3, § 8, art. 1,

of the Constitution of the United States, relative to the regulation of commerce.

(*b*) That it is repugnant to section 2, art. 4, of said Constitution, relative to the privileges of citizens of different States.

(*c*) That it violates the fourteenth amendment of the same, and also section 16, art. 2, of the Constitution of this State (1909).

(*d*) That it violates the Constitution of the United States and of this State, relative to unreasonable searches and seizures and the issuance of search warrants.

The question of the constitutionality of the original act, being Act No. 207, Pub. Acts 1889, of which the law in question is amendatory, has been considered by this court, and the law held to be a valid and constitutional exercise of the legislative power. *Friesner* v. *Charlotte Common Council*, 91 Mich. 504 (52 N. W. 18); *Feek* v. *Bloomingdale Township Board*, 82 Mich. 393 (47 N. W. 37, 10 L. R. A. 69). Similar statutes have been held to be constitutional in other States. 23 Cyc. p. 78, and cases cited in note 59 *et seq.*

It is not contended that this law was not duly and regularly adopted according to its requirements, nor that the legislature might not enact a constitutional local-option law. Claims of unconstitutionality are based upon the provisions of certain sections of this law, the objectionable portions of which, as set forth and relied upon in respondent's brief, are as follows:

"Section 1 of said act provides:

" 'It shall be unlawful for any person, directly or indirectly, himself or by his clerk, agent or employé, to manufacture, sell, keep for sale, give away or furnish any vinous, malt, brewed, fermented, spirituous or intoxicating liquors, or any mixed liquor or beverage any part of which is intoxicating, or to keep a saloon or any other place where any such liquors are manufactured, sold, stored for sale, given away or furnished in any county of this State on and after the first day of May next following after the adoption by the board of supervisors of such county of a resolution prohibiting the same, as provided

167 MICH.—31.

by section thirteen of act number two hundred seven of
the public acts of eighteen hundred eighty-nine, as
amended, so long as said resolution remains unrepealed:
*Provided, however*, that the provisions of this section
shall not apply to druggists, or registered pharmacists,
selling any such liquors under and in compliance with the
restrictions and requirements imposed upon them by the
general laws of this State and sections twenty-five and
twenty-six of this act as amended.'

" 'Section 2 of the act provides, in substance, for the sus-
pension of the general laws of the State, regulating the
business of manufacturing and selling liquor, etc., in the
territory and municipalities within the limits of any county
where local-option is adopted.

" '*Provided, however*, that all sales of liquors by
druggists or registered pharmacists in such counties shall
be under the restrictions and requirements imposed upon
them by the general laws of this State and this act, as
amended.'

"Sections 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, and 14 contain
provisions for ascertaining the will of the people and de-
claring the result of the election in counties where local
option is adopted.

"Section 15 is as follows:

" 'SEC. 15. The prohibitory provisions of this act shall
take effect and have full force within such county of this
State on and after the first day of May, immediately fol-
lowing the adoption by the board of supervisors of such
county of the resolution ordering such prohibition and
upon publication of the notice of the adoption of such res-
olution: *Provided, however*, that nothing in this act
shall be so construed as to prohibit the sale of wine for
sacramental purposes, nor shall anything herein contained
prohibit druggists or registered pharmacists from selling
or furnishing pure alcohol for medicinal, art, scientific
and mechanical purposes, nor prohibit the sale of wine or
cider from home grown fruit in quantities of not less than
five gallons, nor shall the provisions of the act be con-
strued to prohibit the manufacture of wine or cider nor
shall the provisions of this act be construed to prohibit the
sale at wholesale of wine or cider manufactured in said
county to parties who reside outside of said county.'

"Sections 25 and 26 provide that druggists 'shall be per-
mitted to sell such vinous, malt, brewed, fermented, spirit-
uous and intoxicating liquors for medicinal purposes, but

only on the written prescription of a regular practicing physician,' and also provides that such druggists 'shall be permitted to sell pure alcohol or any vinous, fermented or spirituous liquors for art, chemical, scientific or mechanical purposes, but only on the written application of the purchaser, stating the purpose for which such liquors are purchased, which application shall be subscribed and sworn to by the person making such purchase.'

"The general laws of the State referred to above, being Act No. 313, Pub. Acts 1887, provide in section 3 that the provisions of the act shall not apply to druggists who sell liquors for chemical, scientific, medicinal, mechanical or sacramental purposes only, and in strict compliance with the law, and then contains certain provisions in regard to sales to minors, etc., and the giving of a bond."

From respondents' argument and conclusions, drawn from a consideration of this statute, we may state briefly their claims against its constitutionality, as follows: (1) That it deprives citizens of property without due process of law; (2) that it discriminates against citizens and products of other States, and is an interference with interstate commerce; (3) that it discriminates against and abridges the privileges and immunities of citizens of this State, denying them the equal protection of the laws and the privileges and immunities of the citizens of the other States.

It is well settled that the State, in the exercise of the police power, may regulate or prohibit the manufacture and sale of spirituous and intoxicating liquors within its territory. *People* v. *Hawley*, 3 Mich. 330; *People* v. *Gallagher*, 4 Mich. 244.

"If the public safety or the public morals require the discontinuance of any manufacture or traffic, the hand of the legislature cannot be stayed from providing for its discontinuance, by any incidental inconvenience which individuals or corporations may suffer." *Beer Co.* v. *Massachusetts*, 97 U. S. 25.

This is now the accepted doctrine. *Foster* v. *Kansas*, 112 U. S. 201–206 (5 Sup. Ct. 8, '97). The police power of

the State is, however, subject to the limitations of the Federal Constitution.

The law under consideration is a prohibitory law, limited in·this case to the territory of one county; but the same rules of law must be applied in its construction as would be applied were it State wide in its application. When this law went into effect, the brewing company of which respondents were officers and managers was possessed of property which could not be operated for the purposes of making lager beer within the county, or sold without great loss, nor could the valuable product be disposed of. Naturally a great loss and depreciation in value of the property occurred. However much such a state of facts may appeal to us, the fact remains that the question as to whether this condition is not incidental to the business engaged in must be determined as a question of law. We find that the great weight of the authorities holds that a prohibitory law which will so operate is not unconstitutional.

"Although it may deprive persons of the right to pursue a business previously lawful, and may have the effect of diminishing the value of property owned by them, and specially adapted to the continuance of the business, it does not, for that reason, amount to a deprivation of their property or liberty without due process of law, within the meaning of the Constitution." Black on Intoxicating Liquors, § 37.

See, also, *Mugler* v. *Kansas*, 123 U. S. 623 (8 Sup. Ct. 273); *Kidd* v. *Pearson*, 128 U. S. 1 (9 Sup. Ct. 6). Reference is had to the learned opinion in *Mugler* v. *Kansas, supra,* written by Mr. Justice Harlan, where the leading cases are cited and discussed with reference to the provisions of the Kansas statute, and the exceptions therein contained, which provisions and exceptions are identical with our law, with one exception, which will be discussed later.

The authorities last above cited also dispose of respondents' second contention that, under the facts in the instant

case, the court should have directed a verdict of not guilty, for the reason that the manufacture of this beer was for the purpose of preservation of property only. The clear legislative intent expressed in this law was the prohibition of the manufacture or sale of the products therein described (subject to certain express exceptions) within the territory of the county adopting it. The only basis upon which such contention can be made is because of the claim that its denial would operate to diminish in value and destroy property without authority of law, to the damage of respondents. From this it may be reasonably inferred that a liability upon the municipality would result. This argument is not elaborated by respondents, but it may be assumed that the principle of remuneration, as in the taking of private property for a public use, is referred to.

The distinction between the exercise of the right of eminent domain in taking private property for a public use, and the injury, damage, and loss to property, incidental to the exercise of the police power of the State in the promotion of the public welfare, is well defined. *Beer Co.* v. *Massachusetts, supra. Mugler* v. *Kansas, supra.* In the latter case, the United States Supreme Court said:

" These principles have no application to the case under consideration. The question in *Pumpelly* v. *Green Bay Company* [13 Wall.(U. S.)166], arose under the State's power of eminent domain; while the question now before us arises under what are, strictly, the police powers of the State, exerted for the protection of health, morals, and safety of the people. * * *

"As already stated, the present case must be governed by principles that do not involve the power of eminent domain, in the exercise of which property may not be taken for public use without compensation. A prohibition simply upon the use of property for the purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit. Such legislation does not disturb the owner in the control or use of his property for lawful purposes, nor restrict his right to dipose of it, but is only

a declaration by the State that its use by any one for certain forbidden purposes, is prejudicial to the public interests."

There remains a further objection to be considered. This local-option law exempts from its prohibition the sale of wine and cider from home-grown fruit, in quantities of not less than five gallons, and also the manufacture of wine and cider in the county, and the sale thereof at wholesale to parties who reside outside of the county. It is claimed that in this respect the statute is an attempt to restrict commerce, and to discriminate against the citizens and products of other States. Our construction of these exemptions from the operation of this prohibitory law relative to wine and cider, is that in each instance reference is had to wine and cider manufactured from home-grown fruit. It is so expressly stated, relative to the sale in quantities not less than five gallons; and from the context it is clear that the unrestricted manufacture in the county, and the unrestricted sale at wholesale to parties who reside outside of the county, applies only to the products of home-grown fruit.

In discussing the discrimination against the products of other States, contained in statutes similar to our local-option law, Mr. Black, in his valuable text-book, has said:

"In several of the States, at various times, laws have been enacted, prohibiting the sale of wine made from fruits grown outside the particular State, but permitting the sale of that made from fruits grown within the State. And in some few cases provisions of this kind have been held valid. But the great preponderance of authority, based upon repeated rulings of the Supreme Court of the United States, is to the effect that such a discrimination against the products of other States is not defensible as a police regulation, but is unconstitutional and void as an encroachment upon the exclusive power of Congress to regulate foreign and interstate commerce." Black on Intoxicating Liquors, § 44, and cases cited; *Weil* v. *Calhoun* (C. C.), 25 Fed. 865, 873.

See, also, *Kidd* v. *Pearson*, 128 U. S. 1 (9 Sup. Ct. 6).

It is admitted in the brief for the people that these provisions cannot be defended, because unconstitutional. We are satisfied that the weight of the authorities justifies such admission. The question is, not whether a State may not lawfully prohibit or regulate the manufacture or sale of spirituous and intoxicating, vinous, fermented, and brewed liquors, and except a certain amount of some or all such products, to be used for certain purposes, but whether a State, by exceptions, may discriminate against the products and citizens of other States. These exceptions, relative to the manufacture and sale of cider and wine from home-grown fruit in this State, in our opinion, being discriminatory, violate the provision of the Federal Constitution invoked. It remains to be considered to what extent this invalid portion affects the statute.

In discussing this question, Judge COOLEY says:

"A statute may contain some such provisions, and yet the same act, having received the sanction of all branches of the legislature, and being in the form of law, may contain other useful and salutary provisions, not obnoxious to any just constitutional exception. It would be inconsistent with all just principles of constitutional law to adjudge these enactments void, because they are associated in the same act, but not connected with or dependent on others, which are unconstitutional. Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other.  *  *  *  The point is, not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional part is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated, within the meaning of this

rule." Cooley's Constitutional Limitations (7th Ed.), pp. 246 and 247, notes and cases cited.

The original local-option law, so called, was Act No. 207 (Pub. Acts 1889). It was in itself complete legislation, and remained intact, as enacted, as the law upon the subject in this State until the session of the legislature of 1899, and contained none of the provisions relative to the manufacture and sale of wine and cider from home-grown fruits. At that session certain amendments were made, by Act No. 183 (Pub. Acts 1899), to section 15, hereinabove quoted, and the first of these objectionable provisions was added, as follows, "nor prohibit the sale of wine or cider from home-grown fruits in quantities not less than five gallons."

Section 15 was again amended by Act No. 170 (Pub. Acts 1903), which was an act limited to the amendment of this single section, and added the following:

"Nor shall the provisions of this act be construed to prohibit the sale at wholesale of wine or cider manufactured in said county to parties who reside outside of said county."

It is apparent that these amendments did not enter into legislative consideration until long after the original act was in active operation, so that a question, sometimes considered by courts, as to whether the act would have passed without the objectionable clauses of section 15 is not presented.

It remains only to apply the rule above stated to the instant case. It is clear that the general legislative purpose contained in the act may be accomplished with the objectionable provisions stricken out, leaving the act "complete in itself, and capable of being executed wholly independent of that which was rejected." This conclusion has already been intimated by this court in a former decision. *In re Wilson,* 160 Mich. 45 (124 N. W. 1100).

The remaining objection, that this act provides for unreasonable searches and seizures, has received but little

attention in the briefs or upon the oral argument. Our examination of those provisions satisfies us that the objection is not well taken.

The conviction is affirmed, and the court below directed to proceed to judgment upon the verdict.

MOORE, BROOKE, BLAIR, and STONE, JJ., concurred.