## PEOPLE *v*. WHEELER.

1. CRIMINAL LAW—TRIAL—JURY—VOIR DIRE EXAMINATION.

On the trial of a criminal prosecution for the violation of the local option law, where respondent's counsel inquired of one of the members of the panel if the evidence was equally balanced in his mind which way he would be inclined to lean, for the people or for the respondent, and the court suggested that the question should contain the modification or contingency, "If either way," and counsel declined to incorporate the suggested amendment in his question, there was no reversible error in ruling out the question unless some sufficient reason was shown why counsel refused to adopt the suggestion of the court.

2. CONSTITUTIONAL LAW — INTOXICATING LIQUORS — REGULATION — PROHIBITION—DIFFERENT OBJECTS.

The title of Act No. 381, Pub. Acts 1913, relating to the regulation of the sale, consignment, shipment, transportation, etc., of intoxicating liquors and to the prohibition of the same in certain cases is sufficient; regulation and prohibition not being such distinct objects as to violate the constitutional limitation whereby statutes are required to contain but one object: the act in question effects but one purpose, namely, the regulation of the traffic and prohibition under certain circumstances in counties which have adopted local option.

3. SAME—TITLE OF ACT—DOUBLE OBJECT.

Compliance with the constitutional provisions limiting the number of objects to which an act may apply is sufficiently accomplished when the statute has but one general object which is fairly indicated by the title. It is not essential that every end and means necessary to an accomplishment of the general purpose should be effected by a separate act of the legislature. Section 21, Art. 5, Constitution. Under section 16, Art. 2, of the State Constitution and the fourteenth amendment of the Federal Constitution prohibiting the State from depriving any person of life, liberty or property without due process of

law, the State is not prohibited from regulating and pro-
hibiting the manufacture and sale of intoxicating liquors
in the ordinary exercise of its police power.[1]

4. SAME—LOCAL LEGISLATION.

Said Act No. 381 applying to the entire State is not local
legislation within the meaning of Art. 5, section 30, of
the State Constitution requiring acts which have a local
effect to be submitted to and approved by the electors
of the district which is affected.

5. INTOXICATING LIQUORS — CRIMINAL LAW — PRIVATE RESIDENCE—
STATUTES—KEEPING INTOXICATING LIQUORS—PUBLIC HOUSE.

Where respondent was charged with keeping a quantity of
whisky in a room which was not part of his private
residence and in a place of public resort, and where the
evidence tended to show that the room in which the
liquor was discovered was on the first floor of a hotel,
that the entire first floor was used as a place of public
resort, that the room was locked but was surrounded by
others which were open to the public and that it was in
use as a servant's room, being precisely the kind of place
which the provisions of the statute were designed to re-
late to, the conviction of the respondent for violation of
the act was justified.

Exceptions before sentence from Hillsdale; Ches-
ter, J. Submitted January 21, 1915. (Docket No.
127.) Decided March 18, 1915.

Carl Wheeler was convicted of violation of the
liquor law. Affirmed.

*Orville J. Cornell,* for the people.

*Munro & Powell* and *Paul W. Chase,* for respond-
ent.

KUHN, J. The respondent was convicted under Act
No. 381 of the Public Acts of 1913. It was charged
in the information that he "did keep, store, and

---

[1] On the question of the constitutional right to prohibit the sale
of intoxicating liquor, see note in 15 L. R. A. (N. S.) 908.

possess a certain quantity of vinous, malt, brewed, fermented, spirituous, and intoxicating liquor, to wit, a quantity of whisky, in a room, building, and structure other than the private residence not used as a place of public resort of said Carl Wheeler, and situate at No. 66 North street, in the city of Hillsdale, * * * known as the 'Union Hotel' * * * and place of public resort. * * * "

The Union Hotel, or "No. 66 North street," is a three-story brick building. On the first floor there are five rooms. In a large room at the front, cigars, tobacco, and soft drinks were kept for sale. In the rear of this room was a parlor. There is a hallway along the west and south sides of the suite of rooms above described leading from the front door to a door on the east side of the building. At the angle in the hallway where it turns east there is a small room, in which were found by the officers, when they searched the premises with a search warrant, a quart of whisky in a teapot, some whisky glasses, and a tray. At the rear of this small rooms is another small room furnished with upholstered corner seats or benches. In the rear there is another larger room having corner seats upholstered, hardwood floor, and a platform raised about six inches from the floor, on which there was a piano. The second floor was used for living rooms and bedrooms, and the third floor entirely for bedrooms, and the three floors of the building are connected by open stairways.

The first two assignments of error relate to the *voir dire* examination of jurors John Stone and Duane B. Doty. The record with reference thereto discloses the following:

"*Q.* Supposing that the evidence in this case were equally balanced in your mind, which way would you be inclined to lean, for the people or the defendant?

"*Mr. Cornell:* I object to the question.

*"The Court:* The question assumes that he is in-clined to lean.

*"Q.* If the evidence in this case, at the conclusion of the testimony, were equally balanced in your mind, which way would you be inclined to lean, for the people or the defendant?

*"Mr. Cornell:* I object to the question.

*"The Court:* If either way.

*"A.* I—

*"Mr. Cornell:* Just a moment, Mr. Stone; get all the question.

*"Mr. Powell:* I insist upon an answer to my question, if the court please.

*"The Court:* I think the objection is good, unless you amend the question as suggested by the court.

*"Mr. Powell:* An exception.

*"The Court:* You assume in the question that he is inclined to lean one way or the other.

*"Mr. Powell:* No, I am asking him if the evidence is evenly divided at the conclusion of the testimony, which way he would be inclined to lean, for the people or the defendant.

*"The Court:* If either way.

*"Mr. Powell:* No; that isn't the question, your Honor. As I understand, you ruled it was objectionable, and I have noted my exception.

"Juror Stone was later excused by the court without objection on ground of deafness.

*"The Court:* Very well, ask your next.

"Thereupon Duane B. Doty was examined under oath as to his competency, and testified as follows:

*"Mr. Powell* (counsel for defendant): *Q.* Now, if the evidence in this case, at the conclusion of the testimony, were equally balanced in your mind, which way would you be inclined to lean, for the people or the defendant?

*"Mr. Cornell:* I object to it.

*"The Court:* The objection is good, unless amend-ed as suggested in the other.

*"Mr. Powell:* And an exception."

As it appears that Juror Stone was excused by the court because of deafness after the alleged error, the refusal of the court to permit the question to be asked

of the juror could not constitute reversible error. The same question, however, is raised by the examination of Juror Doty. The trial judge, in ruling as he did, relied upon the case of *People* v. *Caldwell,* 107 Mich. 374 (65 N. W. 213), where this court said:

"We need not determine whether the question was proper, under the rule laid down in *Monaghan* v. *Insurance Co.,* 53 Mich. 245 [18 N. W. 797], and cases there cited. As explained by the trial court, the question suggested that the witness would have a desire to go one way or the other; and all that the court asked of counsel was to frame his question so that this suggestion would be eliminated, and the juror required to answer, whether he would have a desire to go one way or the other, or which way he would find. In *People* v. *Keefer,* 97 Mich. 19 [56 N. W. 105], the question was asked a juror; 'If the evidence in this case, as between the people and the defendant, was equally balanced, which way would you give a verdict on the charge of engaging in the saloon business—for the people or for the defendant?' The exclusion of this question was held to be error. Under the suggestion of the court in the present case, counsel would have had an opportunity to ascertain the state of the juror's mind in reference to the saloon business, and how he would have found under the facts suggested; but this counsel declined. No reason is given for declining the question tendered by the court. We think the case should not be reversed on this ground."

But it is contended that in *People* v. *Peck,* 139 Mich. 680 (103 N. W. 178), it was expressly held that it was reversible error to exclude such questions and the answers to them. However, the rule in the *Peck Case* is stated no stronger than in the cases decided by the court previous to the decision of *People* v. *Caldwell, supra. Monaghan* v. *Insurance Co.,* 53 Mich. 238 (18 N. W. 797) ; *Township of Otsego Lake* v. *Kirsten,* 72 Mich. 1, 6 (40 N. W. 26, 16 Am. St. Rep. 524) ; *People* v. *Keefer,* 97 Mich. 15 (56 N. W. 105). The opinion in the *Peck Case* does not refer to the

*Caldwell Case,* and does not in our opinion overrule it. The reason of the rule first stated in the *Monaghan Case* is that counsel have the right to ask this question for the purpose of ascertaining the condition of the juror's mind, which rule is not changed by the decision in the *Caldwell Case,* which expressly recognized the rule, but held that adding thereto the words, "if either way," as suggested by the court, was a reasonable request, and that the condition of the juror's mind could be as clearly ascertained with the amendment as without it, and that therefore it is not reversible error to exclude the question where no reason is shown why counsel refused to adopt the suggestion of the court. So we conclude that in the instant case, counsel having refused to adopt the suggestion of the court as to amending the question, it was not reversible error to exclude the question and the answer thereto.

It is next contended that the act is unconstitutional because its title embraces more than one object. The title is:

"An act to regulate the sale, consignment, shipment, transportation, and delivery to, and the purchase, acceptance, receipt, and possession by any person, firm, or corporation of any vinous, malt, brewed, fermented, spirituous, or intoxicating liquor, when such person, firm, or corporation resides in territory where the manufacture and sale of such liquors for beverage purposes is prohibited; to prohibit the same in certain cases; to prescribe means for the enforcement of the provisions of this act; and to repeal all acts and parts of acts inconsistent with the provisions of this act."

It is urged that regulation and prohibition are two distinct objects, and that the power to regulate is not the power to prohibit. *Timm* v. *Common Council,* 149 Mich. 323 (112 N. W. 942) ; *Churchill* v. *Common Council,* 153 Mich. 93 (116 N. W. 558). It is

true that it has been held that to regulate and to prohibit are not synonymous terms. *People* v. *Gadway,* 61 Mich. 285 (28 N. W. 101, 1 Am. St. Rep. 578). But in our opinion the title of the act in question shows that the act is aimed at but one subject, viz., intoxicating liquor, and provides for the regulation of the sale thereof and the prohibition of the sale under certain conditions. All of which is clearly expressed in the title. Justice COOLEY, in *People* v. *Mahaney,* 13 Mich. 481, 495, in speaking of the constitutional provision which declares that "no law shall embrace more than one object, which shall be expressed in its title" (section 20, art. 4, Constitution of 1850, and section 21, art. 5, Constitution of 1909), said:

"But this purpose is fully accomplished when the law has but one general object, which is fairly indicated by its title. To require that every end and means necessary to the accomplishment of this general object should be provided for by a separate act relating to that alone, would not only be senseless, but would actually render legislation impossible."

In *Flower* v. *Witkovsky,* 69 Mich. 371, 375 (37 N. W. 364, 367), it was said:

"The main purpose of the act is to regulate and prohibit the sale of liquors, to provide when it shall be lawful and when it shall be unlawful, and what remedies may be resorted to in cases of unlawful selling and injuries resulting from such unlawful sales. These things all belong to one primary object, which is the distinguishing of lawful from unlawful sales under the law, and providing penalties and remedies against unlawful sales, and the natural consequences resulting therefrom."

It is also said that the act is in contravention of section 16, art. 2, of the State Constitution, and the fourteenth amendment of the Federal Constitution, which relate to depriving a person of his liberty without due process of law. It is well settled that the State

in the exercise of the police power may regulate or prohibit the manufacture and sale of spirituous and intoxicating liquor (*Fuchs* v. *Common Council,* 166 Mich. 569 [132 N. W. 96]; *People* v. *Eberle,* 167 Mich. 477 [133 N. W. 519]; *Id.,* 232 U. S. 700, 34 Sup. Ct. 464; *People* v. *Schafran,* 168 Mich. 324 [134 N. W. 29]), and that the exercise of this power is not affected by the fourteenth amendment. *People* v. *Damm,* 183 Mich. 554 (149 N. W. 1002).

There is also no force in the contention that it is a local law and should be submitted to and approved by the electors of Hillsdale county before it can become effective, because of section 30, art. 5, of the State Constitution. The act is of State-wide application. It applies to all counties of the State where local option laws have been adopted and to all other counties which may adopt the law, and is therefore general in its scope. It is not such a local act as comes within the provision of the Constitution referred to.

The trial judge, in his charge to the jury, said:

"If a private residence, or any part of it, is used as a store, shop, hotel, boarding house, or a place of public resort, or for any other purpose than a private residence, then it is unlawful to keep, store, or possess the liquors I have mentioned in such private residence."

Error is assigned upon this part of the charge. It is clear, however, that whether this statement was proper or improper, it had no application to this case, as the proofs upon which the conviction was obtained were restricted to the quart of whisky found in the small room on the first floor. The evidence is conclusive, to our minds, that the entire first floor was used as a public resort. It is true that the room in question was locked, but it was surrounded by rooms which were open to the public, and it is reasonable to assume from what was found that it was used as a serving

room, and was precisely the kind of room that the law in question was aimed at.

We find no reversible error. The conviction is affirmed, and the court below is advised to proceed to judgment.

BROOKE, C. J., and MCALVAY, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.