PEOPLE *v.* LESTER.

INTOXICATING LIQUORS — LOCAL-OPTION LAW — CRIMINAL LAW —
KEEPING PLACE WHERE INTOXICATING LIQUORS ARE SOLD—CON-
STRUCTION OF STATUTE.

Act No. 107, Pub. Acts 1909, § 38 (2 How. Stat. [2d Ed.]
§ 5053, 2 Comp. Laws 1915, § 7116), providing that the
having or keeping in any house or building, or in any
room or place occupied by any person, except a private
residence occupied as such, intoxicating liquors for the
purpose of selling, giving away, or furnishing to those
frequenting such place, or to others, shall be held to be
the keeping of a place where intoxicating liquors are
sold, furnished or given away, and section 1 (2 How. Stat.
[2d Ed.] § 5017, 2 Comp. Laws 1915, § 7080), providing
that it shall be unlawful for any person to manufacture,
sell, keep for sale, give away or furnish any intoxicating
liquor or keep a saloon or any other place where any such
liquors are manufactured, sold, stored for sale, given away
or furnished, must be read together, and as such, con-
strued that if the offense of keeping a place where intoxi-
cating liquors are stored, given away and furnished is
shown to have been in a private residence, something
more must be shown than simply the keeping or having
any of the liquors mentioned in section 1.

Exceptions before sentence from Hillsdale; Chester,
J. Submitted January 10, 1917. (Docket No. 160.)
Decided March 30, 1917.

Lewis Lester was convicted of keeping a place where
intoxicating liquors were furnished in a county that
had adopted prohibition. Affirmed.

*Frank M. Hall,* Prosecuting Attorney, for the people.

*Wilbur D. Grommon,* for respondent.

MOORE, J. This case is here upon exceptions before
sentence. The defendant was convicted of keeping a

place where intoxicating liquors were stored, given away, and furnished. The cross-examination of the defendant is illuminating; we quote it in part:

"*Q.* Is that John Neidigh a particular friend of yours?

"*A.* He is a friend of mine.

"*Q.* Now that night that John came down there what did he say when he came in there?

"*A.* Well, he said something about getting a drink and something about selling him a drink.

"*Q.* He went down there to ask you for whisky?

"*A.* Yes.

"*Q.* And you gave him two smiles, didn't you?

"*A.* Well, I can't say whether he took one or two. I think he helped himself. I told him he could have a drink. I don't remember whether I got it and set it on the table for him. He hadn't been there a great while. I said he could have a drink, but he couldn't buy one. * * *

"*Q.* John Gibson was there the same day, wasn't he?

"*A.* Yes, sir.

"*Q.* Did you give him some liquor?

"*A.* Yes.

"*Q.* How many drinks did John have?

"*A.* I don't know whether he took more than two or not. I don't think he did.

"*Q.* John wasn't intoxicated was he?

"*A.* Well, John had been drinking a little.

"*Q.* And you noticed it, didn't you?

"*A.* Well, no; not until he had been there some little time. I didn't notice it much until he went away.

"*Q.* Now, on the 14th of December you had four quarts of whisky come there to Prattville, didn't you?

"*A.* I don't remember what time it was.

"*Q.* Well if the records so show, it would be true, wouldn't it?

"*A.* Well, yes; I have no reason to doubt that.

"*Q.* Since that time and before you were arrested you ordered four quarts more, didn't you?

"*A.* Yes.

"*Q.* Does it take two gallons of whisky to run you a month?

"*A.* I don't think a man is much of a drinker if he can't drink a quart in 24 hours. I don't drink that much on an average.

"*Q.* Also, Mr. Dodson got some whisky at your house, didn't he?

"*A.* He did.

"*Q.* And John Gibson got some?

"*A.* Yes, sir.

"*Q.* And John Neidigh?

"*A.* Yes, sir.

"*Q.* And Mr. Gaskill? And Vern Dayton?

"*A.* Yes, sir.

"*Q.* And Gus Burnham?

"*A.* Yes.

"*Q.* Did John Gibson ever ask you for any whisky?

"*A.* No, he might have said, 'Have you got anything around anywhere?' speaking in that way, and I would say, 'Yes,' if I knew where it was.

"*Q.* And you knew by that that he meant whether you had anything to drink or not?

"*A.* Yes. He asked for it maybe once or twice.

"*Q.* When Neidigh came there, the only time he was there, he just simply asked for whisky, didn't he?

"*A.* Yes.

"*Q.* Clarence Burnham got several drinks there, didn't he?

"*A.* Yes, sir. He has been there maybe a half dozen times. All Gaskill had was one bottle of beer, all Dayton had was one bottle of beer, and all Gus Burnham had was a glass of beer, I think.

"*Q.* Do you remember the time when Mr. Fisk came down there?

"*A.* Yes, sir. He drank out of his bottle, and I drank out of mine.

"*Q.* And you had a little row there?

"*A.* Oh, not much of a row, just a little chewing match, but nothing that amounted to much. He talked back after he got on the steps, and I told him he better go on and not stop and chew the rag there; didn't want no loud talking; it didn't look well.

"*Q.* You were running a quiet place there?

"*A.* Why I tried to; yes, sir.

"*Q.* You wanted your place kept quiet?

"*A.* Yes, sir."

The contention of counsel for defendant is well stated as follows:

"I want to object to any testimony in this case under the information filed herein for the reason that it sets forth no offense known to the laws of the State. In addition to the general objection, I desire more specifically to object for the reason that the information charges defendant with having kept a place where intoxicating liquors were stored, given away, and furnished, and describes said place as a certain building, namely, his residence situate on Railroad street in the village of Prattville, whereas Act No. 107 of the Public Acts of 1909, an amendatory act to Act No. 207 of the Public Acts of 1889, defining what constitutes keeping a place, expressly exempts a private residence. The section that I refer to is section 38 of the act, and is as follows (2 Comp. Laws 1915, § 7116) :

"'The keeping or having in any house or building, or in any room or place occupied by any person, corporation, club, association or society, except a private residence occupied as such, of any of the liquors mentioned in section one of this act for the purpose of selling, giving away or furnishing to those frequenting said place, or to others, shall be held to be the keeping of a place where intoxicating liquors are sold, furnished or given away.'

"Under this section, as I understand the law, the legislature has expressly exempted from this particular offense a private residence. A man might be guilty of selling, he might be guilty of furnishing or giving away from a private residence, but he could not be guilty of keeping a place. I think the legislature intended by this act to put that question out of cases where the place was a private residence. A man may be guilty of some other violation of the law there, but it is my contention that under this section he could not be guilty of keeping a place in a private residence."

Section 38, quoted above, should be read in connection with section 1, Act No. 107, Pub. Acts 1909 (2 Comp. Laws 1915, § 7080), which reads:

"It shall be unlawful for any person, directly or indirectly, himself, or by his clerk, agent or employee,

to manufacture, sell, keep for sale, give away or furnish any vinous, malt, brewed, fermented, spirituous, or intoxicating liquors, or any mixed liquor or beverages any part of which is intoxicating, or keep a saloon or any other place where any such liquors are manufactured, sold, stored for sale, given away or furnished, in any county of this State. * * *"

We think counsel is wrong in his contention that section 38 makes it impossible to commit the offense charged in a private residence. The two sections should be read together, and when so read we think a proper construction is that, if the offense is shown to have been in a private residence, something more must be shown than simply the keeping or having any of the liquors mentioned in section 1. The trial court did not err in submitting the question to the jury. See *People* v. *Lewis*, 166 Mich. 516 (132 N. W. 82).

Complaint is made of the argument of the prosecuting attorney. We do not think it exceeded the latitude permitted to counsel in commenting upon the testimony, and in answering the argument of opposing counsel.

The conviction is affirmed, and the case is remanded to the trial court, with direction to proceed to sentence the defendant.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, and BROOKE, JJ., concurred. FELLOWS, J., did not sit.