## PEOPLE v. CALLIARI.

1. INTOXICATING LIQUORS—CRIMINAL LAW—EVIDENCE.
    In a criminal prosecution for keeping, storing, and possessing intoxicating liquor in other than the residence of defendant, where the evidence disclosed that defendant was professedly engaged in the sale of nonintoxicating liquors in one room of a building, the remainder of which was the residence of his mother, but he had once been engaged in the sale of intoxicating liquors in such room, and liquor was found under the floor of his mother's room, which defendant claimed belonged to his mother, although it had originally belonged to him while in the saloon business, because he had transferred it to her in satisfaction of a debt, and defendant further claimed that he handled only nonintoxicating liquor, evidence that persons were seen drinking beer in other rooms of the building was competent.[1]

2. SAME—EVIDENCE—DIRECTED VERDICT.
    Under the state of the evidence, the court did not err in refusing to direct a verdict in favor of accused.

---

[1] On the question of inference of intent to sell intoxicating liquor from possession, see note in 39 L. R. A. (N. S.) 534.

3. NEW TRIAL—ABSENCE OF WITNESSES—CRIMINAL LAW.

A motion for a new trial, on the ground of the absence of witnesses who would deny the testimony of a witness for the prosecution that such absent witnesses were drinking beer in the residence of defendant's mother, was properly denied where no request was made during the trial for time and no effort was made to procure their attendance, and it was not claimed that they were not in the county or not within reach at the time, and it did not appear that either or all of these witnesses would, if put under oath, deny the testimony of the witness for the prosecution.

Exceptions before judgment from Iron; Flannigan, J. Submitted April 12, 1917. (Docket No. 155.) Decided May 31, 1917.

Dolfo Calliari was convicted of violating the local option law. Affirmed.

*A. F. Dixon*, for appellant.

*August J. Waffen*, Prosecuting Attorney, for the people.

MOORE, J. This case is here on exceptions before sentence. Respondent was arrested for keeping, storing, and possessing, on and between May 1, 1915, and August 12, 1915, intoxicating liquors in other than his private residence, and was convicted at the September, 1915, term of the circuit court for Iron county. A new trial was applied for and denied.

Respondent assigns the following errors.

"(1) In admitting under the objection of the said respondent the testimony of witness M. J. Monahan.

"(2) In not directing the verdict of acquittal upon motion of the respondent; and

"(3) In denying the motion of the said respondent for a new trial in said cause."

The attached diagram is helpful:

EXHIBIT A

In disposing of the motion for a new trial the trial judge expressed himself in part as follows:

"Previous to May 1, 1915, the respondent conducted a saloon for the sale of intoxicating liquors at retail, in the barroom shown on the diagram. From May 1, 1915, down to the time of the trial the barroom was occupied by the respondent for the sale, as he claims, of nonintoxicating liquors. In the building which is owned by her, Mary Calliari, the mother of the respondent, conducted a boarding house. August 12, 1915, Charles McFarland, marshal of the village of

Iron River, and a deputy sheriff, armed with a search warrant, and accompanied by others, who appeared as witnesses, made a search of the building in question for intoxicating liquors. On entering room No. 4 on the diagram, which is called Mrs. Calliari's bedroom, they found a trunk resting on a rug, which in turn rested on the floor. On removing the trunk and the rug, they found in the floor directly under the spot where the trunk stood a trapdoor, which was countersunk and did not raise readily. One of the jaws of a pair of ice tongs found in the room was put in a place between the trap door and the floor and the trap door was pried up. The jaws of the ice tongs fitted into the place in such a way as to indicate it had been often used in raising the trapdoor. Beneath the trapdoor was found a hole or opening in the soil, which, according to the testimony of a witness, was prepared in April, 1915, which would be shortly before the local option law took effect. In this hole or opening were found two barrels and a number of bottles of different kinds of liquor, all of which it was conceded were intoxicating. On one of the barrels or boxes, was the defendant's tag. It was further admitted that the liquor belonged to the respondent when he was lawfully engaged in the sale of intoxicating liquor, but it was claimed by him, and he and his mother testified, that upon being forced out of the saloon business by the adoption of local option he transferred the ownership of the liquors to his mother in cancellation of an indebtedness due her for rent of the saloon, and that at the time of the discovery of the liquor it was owned by the mother. * * *

"That the liquor belonged to the respondent before he closed out his licensed saloon; that when discovered his tag was on at least one of the barrels or boxes; and that the liquor was secreted in the manner mentioned—were conceded facts. If, as they had a right to do, the jury believed the testimony of the witnesses for the people, they found the existence of the additional facts, that when the liquor was discovered, Mrs. Calliari disclaimed ownership thereof, and that on June 20th, June 29th, and August 4th, which was but six days before the liquor was discovered in the hole under the floor, rooms marked on the diagram

as Nos. 1, 2, and 5, were used for the sale and consumption of intoxicating beer, and that such beer, on at least one of these occasions, was served to the guests by the respondent. It further appeared that the respondent received by railroad from outside shipments of liquor by the half barrel in July and by the gallon in August.

"Mrs. Calliari claimed she intended the liquor for her sole use as a medicine. When the quantity and variety of it is considered, the jury may well have thought that claim extravagant, and that if the liquor was honestly hers, she would have claimed it instead of denying its ownership when it was first discovered.    *    *    *

"The respondent was at pains to give the impression that there was no intoxicating liquor kept in his so-called temperance saloon or elsewhere on the premises, except in the secret cave under the bed. If the jury found that intoxicating beer was served by the respondent to the witness Monahan and others a few days previous to the discovery of the liquor, they had the right to infer it came from the hole under the floor; and if the respondent handled it, and sold from it, and dealt with a part of it as his own, a few days before the trapdoor was opened, the jury would have the right to infer he owned it when it was discovered; there being no claim of a change of ownership between July 29th and August 12th.

"The jury was also entitled to take into account the appearance and manner of the witnesses. If the members of the jury were impressed, as was the trial judge, by the demeanor of these witnesses, they had no occasion to look further for justification of the verdict.

"Monahan testified that he saw Mike Dooley, Emil Bruso, and A. Michaelson in the Calliari rooms drinking beer. The respondent claims that since the trial he has discovered these persons, or some of them, would, if sworn, contradict the testimony of Monahan. Two of these persons were deputy sheriffs of Iron county, and the third a well-known blacksmith. During the progress of the trial no request was made for time and no effort whatever was put forth to procure their attendance. It is not claimed they were not in

the county or not within reach at the time. Furthermore it does not appear from the affidavits filed in support of the motion for a new trial that either or all of these witnesses would, if put under oath, deny the testimony of Monahan.

"The motion for a new trial will be denied."

The testimony of Mr. Monahan was clearly competent. The respondent was insisting that the only intoxicating liquors on the premises were owned and controlled by his mother, and that the only liquor he handled was nonintoxicating. These contentions were contradicted by the testimony of Mr. Monahan. An examination of the record satisfies us the judge was quite right in declining to direct a verdict or to grant a new trial. See *People* v. *Wheeler*, 185 Mich. 164 (151 N. W. 710) ; *People* v. *Lester*, 195 Mich. 477 (162 N. W. 72).

The conviction is affirmed, and the case is remanded for judgment.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, and BROOKE, JJ., concurred. FELLOWS, J., did not sit.